THE MAD RIVER AND LAKE ERIE RAILROAD COMPANY *v*
ANSON C. BARBER.

In an action against a railroad company, for an injury sustained by a person
while acting in the capacity of conductor on a train of cars, on the ground
that the injury was the result of the insufficiency of the cars, or defects in
the machinery or fixtures of the train, the company is not to be treated as a
guarantor of the sufficiency and safety of the cars, and machinery of the
train ; but as responsible only where the injury is without fault on the part
of the conductor, and the result of the neglect of that ordinary and reasona-
ble care and diligence in furnishing sufficient and safe cars and machinery
for the train, which appertains to that particular branch of business.

The conductor of a train of railway cars, although he undertakes his engage-
ment in view of the nature, hazards and responsibilities of his employment,
has reason to expect, and a right to exact *that reasonable care and diligence* on
the part of his employer, in furnishing him with safe and sufficient cars and
machinery for the train, which is most common and usual in the business of
railroad companies ; and being presumed to contract in contemplation of
*this,* he can require *no more.*

The conductor of a train of railway cars, being the representative of the rail-
road company in the command and management of the train, and not being
under the *immediate* control and direction of a superior or supervisory agent,
is held to *ordinary and reasonable care and diligence,* not only in the manage-
ment of the train, but also in the due inspection of the cars, machinery and
apparatus of the train, as to their sufficiency and safety ; and if he receive
an injury while neglecting that care and diligence required of him in the
management of his train, or by means of any defect or insufficiency in the
cars, machinery or apparatus, with a knowledge of which he was running
the train, or which could have been known to him, by the exercise of that
care and diligence required of him in the performance of his duty, or in
other words, if his neglect in either of these particulars contributed as *a
proximate cause* of the injury, he can have no right of action against the
company for damages.

A railroad company is not liable to an action for damages for an injury re-
ceived by a conductor of one of its trains, in consequence of the insufficiency
of the cars, or defects in the machinery or apparatus of the train under his
charge and control, where such insufficiency or defects were *unknown* to both
parties, and neither party was *in fault.*

In such action, the plaintiff, in order to lay a sufficient foundation for a re-
covery and judgment, for an injury received by him while acting as such
conductor, must aver, or show in his petition, in addition to the allegation
that he had not a knowledge of the insufficiency or defects which were the
alleged cause of the injury, that he had exercised due care and diligence in
the use and examination or inspection of the cars, machinery etc., belonging
to the train, while the same were in his charge, and under his direction.

The Mad River & Lake Erie R. R. Company *v.* Barber.

It is the duty of a railway company to furnish the necessary and proper number of hands for the safe management of its trains ; and for a delinquency in this particular, the conductor of a train has a right to decline his charge, or refuse to run the train. But where he takes the charge, and runs his train for a length of time, without a sufficient number of hands, he voluntarily assumes the risk, and waives the obligation of the company in this respect as to himself, and if injured by means of such delinquency on the part of the company, he is without a remedy against the company for damages.

THIS is a petition in error to reverse the judgment of the District Court of Seneca county.

In February, 1855, Barber filed a petition in the court of common pleas of Seneca county, against the railroad company, in which he alleges :

" That on the 28th day of December, A. D. 1852, he was in the employ of the said defendant, the said Mad River and Lake Erie Railroad Company, as the conductor of a freight train of cars running between Sandusky City and Kenton, Ohio, on the track of said defendant's road. That while he was so in the employ of said defendant, and on the day and year aforesaid, the said defendant placed under his charge a train of heavily loaded freight cars, and requested him, as the servant of the said defendant, to conduct said train by the defendant's said road to the town of Kenton, in the county of Hardin, and State of Ohio ; and that, as the servant of the defendant, he took charge of said train as the conductor of the same for the purpose aforesaid. That said defendant failed and neglected to provide said train with hands necessary to manage and control the same upon the grades of said defendant's road. That said defendant failed and neglected to furnish said cars in said train with necessary brake rods, brake chains, brake rubbers, and other machinery to work said brakes, and make the rubbers thereof bear upon the wheels of the cars in said train. And the defendant failed and neglected to furnish the cars in said train with suitable, proper, necessary or safe platforms or places upon which to stand and work said brakes. That said defendant failed and neglected to furnish necessary, suitable, or safe connecting links for attaching the cars in said train together. But on the contrary, the defendant caused the

plaintiff to take said train under his charge and conduct the same to the said town of Kenton, without any person to assist him in the working or management of the brakes and cars therein upon the grades of said road. That the defendant wrongfully and negligently furnished said train with a deficient amount of brake rods, chains, rubbers, levers, and other machinery for braking and controlling the motion of the cars in said train upon the grades of defendant's said road. That the defendant wrongfully and negligently provided for and furnished the cars in said train with defective brake rods, and defective and broken and unsound brake chains, and defective and unsafe levers and other machinery, with which to work said brakes, and unsafe, dangerous and defective platforms upon said cars, whereon to stand when working said brake. That the defendant wrongfully and negligently provided for and furnished the cars in said train with defective, unsound and broken connecting links by which to attach the same together. That he received the said train with all the defects and imperfections aforesaid in the cars, brakes, connecting links and other machinery, and that he was at the time he so received said train, and continued wholly ignorant of said imperfections and defects, and said defendant wholly failed and neglected to inform him thereof. That he conducted said train in the conditions aforesaid to the said town of Kenton, and he then caused said train to be moved upon a heavy down grade for the purpose of having the same switched off from the main track to a side track of said road, which was a necessary and usual movement of said train at that point, and for the purpose of enabling a train coming from the south upon the main line of said road to pass the train under the charge of the plaintiff as aforesaid. That as said train was started upon said grade, one of the connecting links so wrongfully and negligently placed on said train broke and permitted said train to part, and three heavy eight-wheeled heavily loaded freight cars were thus detached from the balance of the train, and being in the rear of the balance of said train, commenced running down the said grade, endangering the locomotive and other cars in said train. That in order to prevent a collision among the cars in said train, he immediately got on

board of one of said detached cars, and placed himself upon the platform, and took hold of the lever on the top of the brake-rod, and commenced winding up the brake-chain in order to make the rubber bear upon the wheel of said car, and thereby check the motion of the same with the other detached cars. That when he was so winding up the brake-chain as aforesaid, the same suddenly, by means and in consequence of the defects therein, gave way, and that said lever and brake-rod were in consequence of the giving away aforesaid caused to whirl rapidly round, and throw plaintiff from his balance and prevent him from holding his footing on the defective platform or standing-place on said cars, and threw plaintiff on the ground in front of the said cars, which were in motion and passing down said grade. That in consequence of said fall from said platform to the ground, he was stunned and rendered insensible, and said loaded cars passed over him, and by the fall aforesaid and the passing of said cars over the plaintiff, he was greatly injured, and had one of his knee-pans broken and his right arm crushed, thereby causing him to be lame in one of his legs through life, and rendering him lame in said right arm to such an extent that he has lost the use of his right hand throughout his whole life, and was rendered otherwise lame and unhealthy, and unable to pursue any of the active or useful vocations of life. That in consequence of the injuries aforesaid, he suffered great bodily pain and anguish, and yet suffers pain and anguish, and that he is disfigured and unabled from making a living. That he incurred said injuries in the proper and rightful discharge of his duty, and in consequence of the neglect and wrongful acts of the defendant aforesaid. That the said county of Seneca, in which the plaintiff has brought this suit, is one of the counties in which defendant's said railroad is located. Wherefore the plaintiff asks judgment against the defendant for the sum of forty thousand dollars," etc.

To this petition the defendant demurred, on the ground that it did not state facts sufficient to constitute a cause of action. The court overruled this demurrer, and the defendant excepted, and on leave filed an answer, averring:

"That, on the 28th day of December, A. D. 1852, the plain-

tiff was, and for about prior to that time, had been in the employ of the defendant, as the conductor of the train of cars in the petition mentioned, for which, so long as he continued to serve the defendant as such conductor, the defendant agreed to pay him at the rate of one dollar and sixty cents per day. That the contract between it and the plaintiff under which the plaintiff was to and did render said services, was for no determinate period of time, but the defendant had the right, at any time, to discharge the plaintiff, and he had, at any time, a right to leave the service of defendant. That from the time he was so employed up to the time said accident happened, the plaintiff continuously had charge of said train as its conductor, and the defendant denies that on said 28th day of December, A. D. 1852, it did anything specially towards putting said train under the charge of the plaintiff, or that it gave him any special directions in relation thereto ; but the plaintiff took said train in the ordinary course of his business, and because he was its conductor as aforesaid. Defendant denies that it failed on its part to provide men sufficient to run and manage said train, or that it failed to provide for the use thereof suitable connecting-links, brakes, brake-chains, or levers or platforms, or that it furnished cars for said train having any of the defects in said petition mentioned, which it could by ordinary care and diligence on its part, except as that care and diligence was exercised through and by means of the plaintiff, as such conductor, have detected or avoided. That said train of cars, while the plaintiff was so the conductor thereof, was under his management and control ; that it was his duty to see that all the other employees of the defendant attached to said train performed their duty ; that it was his duty to run, manage and control said train in the most careful and prudent manner ; and it was his duty to keep, and see that said train was kept, at all times, under proper and safe control ; to do whatever was necessary to effect that object; and it was especially his duty to ascertain and keep himself at all times informed of the condition of the cars composing said train, and of the connecting-links, brakes, chains, and all fixtures and machinery connected therewith ; and to see that no

car was permitted to run in said train which it was dangerous or unsafe so to use ; and to see that his said train, taken as a whole, had no defects or deficiencies which rendered it unsafe to run the same upon the defendant's road.  That the plaintiff, on the said 28th day of December, A. D. 1852, before said accident happened, and at the time he so engaged to become the conductor of said train, well understood the hazards of that business, and well knew in all respects the condition of defendant's road, and the character of its grades; and on said 28th day of December, A. D. 1852, and before said accident happened, the plaintiff well knew how many men were in actual service on said train, and if said train, or the cars composing the same, had on that day any of the defects or deficiencies in said petition mentioned, which by care and diligence he could have discovered, it was gross negligence on his part that he did not discover the same.

" That the negligence and want of care of the plaintiff in the management of said train, before and at the time said accident happened, materially contributed to produce the injury of which he complains."

The trial in the common pleas resulted in a verdict and judgment for the plaintiff below, and the defendant appealed.

The case came on for trial to a jury in the district court at the September term, 1855.

It appears from the bill of exceptions taken in the district court, that the testimony introduced on the part of plaintiff on the trial tended to establish the following facts: The plaintiff went into the employ of the defendant in the spring of the year 1852, and acted, the greater part of the time he was so in defendant's employ, as the conductor of a train of cars on defendant's road, and a part of the time in other capacities.  In the latter part of November, 1852, he became the conductor of a train of freight cars running between Sandusky and Kenton.  The defendant had two freight trains on that route, and in the regular course of business they left Sandusky on alternate days at five o'clock in the morning, and arrived in Kenton at four o'clock in the afternoon of the same day, and returning left Kenton in the morning on alternate days, and arrived at Sandusky the same

day.  Of one of these trains plaintiff was the conductor, and Benjamin R. Pratt was the conductor of the other, and they were accustomed to pass each other at Tiffin.  On the 27th day of December, 1852, the plaintiff and said Pratt, with the consent of J. A. Barker, the general freight agent of the defendant, exchanged trains for one trip.  On the 28th day of the month last aforesaid, the plaintiff, with Pratt's train, met Pratt with plaintiff's train about a mile north of Tiffin, and they exchanged back again, and the plaintiff took his train, which was going south, and which had that morning come from Sandusky under the charge of said Pratt, and proceeded south with it on his way to Kenton.  The plaintiff's train was, when he took it, behind time, and he was further and unavoidably delayed at and near Tiffin.  The plaintiff had, on said train, no freight for any station between Tiffin and Kenton, and after leaving Tiffin he did not stop at any station, except once or twice to take wood and water for the engine, until he arrived at Kenton.  The plaintiff made no examination of the cars comprising said train, for the purpose of ascertaining the condition of the brakes and machinery therewith connected, or of the wheels and running gear, either at the time he took the same from the hands of Pratt or at any time after that on that day.  The plaintiff arrived at Kenton with said train at about five o'clock P. M. of the day last aforesaid, and stopped at a warehouse there for the purpose of discharging some freight.  The grade of the railroad at the point where he stopped, descends toward the south, and continues to do so from that point for a distance of about 900 feet, at the rate of about 40 feet per mile.  In the ordinary course of business, this train passed down this grade to the bridge on the Scioto river, and then back into a side track to permit the train coming from the south to pass.  On this occasion, after the plaintiff had finished discharging freight at said warehouse, said train was started forward in the direction of said bridge, and after the engine, with a part of the train, had passed along, the plaintiff, who was standing near the track in conversation, discovered that the hinder part of the train had become detached and had been left behind, but was in motion, and was moving down said grade after

the part of said train attached to the engine. The detached part of the train, when plaintiff first discovered it, was north of where he was standing, and was coming towards him, and as soon as he discovered it he ran to it, got upon the first car, and standing with one foot on the platform or step in front of the car, and one knee on top of the car, with his hands took hold of the cross-bar on the top of the brake-staff; he endeavored to turn the same for the purpose of stopping said cars. At the first effort he did not succeed in turning said brake. He made another effort, using more force, when the same suddenly gave way and turned freely; by reason of which the plaintiff's hands slipped off and he fell to the ground in front of said car, and one wheel of the car passed over his right arm between the hand and elbow, crushing it very badly; and the plaintiff was otherwise injured by the fall. The cars composing said train were all eight-wheeled box cars, from 24 to 28 feet long, and about ten feet high, and were all, with one exception, loaded with lumber. The only men on said train, on that day when the plaintiff took the same from the hands of said Pratt, besides the plaintiff, were the engineer, fireman and wood-passer. The plaintiff, further to maintain the issue on his part, introduced James Ford as a witness, who testified, among other things, that after the accident he examined the brake of the car from which the plaintiff fell; that he found the brake-chain broken, and he judged from its appearance that the break in the chain was an old one. William D. Stearns, whose deposition was introduced by the plaintiff, testified that he examined said brake after said accident, and that he found said brake-chain broken. There was no further or other evidence introduced on said trial by either party tending to show from any examination of said brake-chain that it was broken, or when it was broken; but there was testimony tending to prove that said chain broke while plaintiff was working the brake and at the time of the injury to plaintiff. The plaintiff introduced evidence tending to show that said train became separated at Kenton, as above mentioned, by the breaking of a connecting link, and that said link was defective. The only witness who examined it after it was broken, and the only one who gave any testimony in relation to any defect

therein, was Geo. R. Crain, whose deposition was introduced by said plaintiff, and who testified that the defect was that the link was not sufficiently welded in making. And the plaintiff gave evidence tending to prove that the brake from which the plaintiff fell, as aforesaid, was constructed with a cross-bar on the top of the brake-shaft in this form $+$ for turning the same, and that a brake thus constructed could not be as safely and conveniently used as one with a wheel or rim at the top. The defendant gave evidence tending to prove that the plaintiff, as the conductor of said train, had the entire management and control of the same while upon the road; that he had the control of all the other servants of the company employed in said train; that it was his duty to see that each man upon the train was at his post, and in the faithful discharge of his duty; that if there were no brakemen on said train it was the fault of the conductor, as the defendant employed a brakeman for the train, and if he were absent from his post or neglected to do his duty, it was the conductor's business to report the fact to the freight agent, who would, in such case, provide another brakeman for the train. The defendant gave evidence tending to prove that the train of which the plaintiff was the conductor, aforesaid, was a distributing freight train; that there were five regular stations on said road, between Tiffin and Kenton; that it was the duty of the plaintiff, as the conductor of said train, to stop with the same at each station, and at each station to examine the wheels, running gear, brakes and machinery connected therewith, of the cars comprising said train; that if any car became unsafe to run, it was the duty of the conductor to leave it at the first side-track; that for a mere defect in the brake of a car, even if such defect rendered the brake unserviceable, it would not be the duty of the conductor to switch and leave the car, but it was his duty to examine the brakes and keep himself informed of their condition, that he might know what brakes could be relied upon for use, and that he might, on his return to Sandusky, report to the freight agent all defects and deficiencies.

Upon the conclusion of the evidence, the defendant requested

the court to give to the jury, among others the several separate instructions following, to wit:

1st. That so far as the plaintiff was concerned, the defendant was not bound to furnish cars with brakes of any particular construction, and that the fact, if such be the fact, that the brake-staff on the car from which the plaintiff fell was surmounted by a cross-bar instead of a wheel, furnished no grounds of recovery in this case, even though the jury should find the latter mode of construction to be the safest and best.

2d. That if the jury find that the plaintiff had been running his train for one or more trips without brakemen or trainmen, and without complaint on his part, the fact that there were no such men on the train at the time of the accident, furnishes no ground for recovery.

3d. That if the jury find that the absence of brakemen on the train in plaintiff's charge at the time of the accident, was by reason of the negligence of Pratt, who, by plaintiff's consent, had conducted said train from Sandusky to Tiffin when it was taken by the plaintiff, then such absence of brakemen gives to the plaintiff no right to recover.

4th. That if the jury find that the injuries of which the plaintiff complains were occasioned by defects in the machinery or cars composing the train under the plaintiff's charge, and that such defects were unknown to the defendant, and were of such a character that the defendant could not, in the exercise of ordinary care, have detected or avoided them ; that for injuries thus occasioned the plaintiff cannot recover.

5th. That the plaintiff in entering into the employ of the defendant as the conductor of any of its freight trains, took upon himself the ordinary hazard of that business, and that the breaking of a brake-chain or connecting-link from secret or latent defects therein, which could not, by ordinary care, have been discovered, is one of the ordinary hazards of that business, and for injuries sustained by the plaintiff, occasioned by such breaking, the plaintiff is not entitled to recover.

6th. That if the injuries of which the plaintiff complains befell him by reason of his ignorance of defects in the machinery

The Mad River & Lake Erie R. R. Company *v.* Barber.

or cars composing the train of which he had charge—which defects he might have known by the exercise of proper care and caution, and the performance of his duty as the conductor of said train—then he is not entitled to recover.

7th. That if the plaintiff's neglect of duty as the conductor of the train in the petition mentioned, contributed, in any degree, to produce the injuries of which he complains, he cannot recover.

And thereupon the court charged the jury as follows, to wit :

" GENTLEMEN OF THE JURY :—After the very patient and attentive hearing you have given this case, it may be confidently anticipated that your verdict will be such as the law delights in, and all that the parties have a right to expect.

" We are living in the patent age of new inventions, and every one of these inventions exerts its influence either for good or evil, or both, on society. Amongst the most remarkable of these modern improvements is the application of steam to the running of wheeled carriages. The good and salutary effect of this great improvement in the mode of travel and transportation, are seen and felt and acknowledged everywhere within the circle of its influence ; and all men are interested in preserving, improving and perfecting this great instrument for the dissemination of thought and for the interchange and distribution of the products of the soil and the work-shop.

" But to preserve it and make it what it is so well calculated to be, a help and benefactor, it must be properly managed by prudent men, men of intelligence, men who know well their respective duties in their respective stations, and will perform them regardless of all consequences. When it ceases to be so managed it will have ceased to be a blessing, and had better be abandoned. The law, then, in holding the proprietors of these roads to a strict and faithful discharge of their duties, seeks to preserve their usefulness to the community by making them respond in money for any injury sustained through the improper management of those having them in charge. These railroad companies, being new creations, their legal liabilities are not so clearly and exactly ascertained and defined as those of persons who have been the subjects of the law for centuries. Yet their

rights, their duties and liabilities, must be ascertained; and when their rights have been encroached upon they must have redress; when they have committed a wrong or failed to discharge a legal duty, they must be held responsible, and a court of justice and a jury of intelligent gentlemen is a proper tribunal to try the facts and administer redress. To you, then, gentlemen, as to an intelligent and impartial tribunal, this controversy is submitted, and you will, of course, try and treat it as though it were between natural persons. You are not to know, in your deliberations and conclusions, whether these parties are natural or artificial: a corporation may not, and, in fact, has not a soul to save; but it has a pocket to condemn, and the fact that many of their pockets at this particular period are utterly uninhabited, is rather a misfortune than a crime. However, as this tribunal tries pocket, and not soul cases, the mere fact that this defendant is soulless must not, in the least, be allowed to affect or influence your deliberations or conclusions. Try the case as between persons standing as perfect equals before the laws. What, then, is the real issue between these parties which you are called to try and pass upon? In order to answer in your presence this question in an intelligible and effective manner, it will be necessary to revert to the evidence in the case. But in alluding to the evidence, I intend only to speak of those facts about which there is no controversy; the controverted facts are for your determination alone: The plaintiff, on the 28th day of December, 1852, was in the employ of the defendant (the defendant being a railroad company) to conduct between Sandusky and Kenton, on defendant's road, a train of cars for the transportation and distribution of freight. *This is simply and entirely the contract.* But this contract attaches to itself a great many legal and necessary incidents. What are these incidents? As to the plaintiff, first, he hired for a specific, fixed and certain purpose. He is presumed to have known the nature, the hazard, and the responsibility of the business upon which he was entering, and to have entered upon it with all its duties, hazards and responsibilities staring him in the face; and he was bound to discharge his duty with such prudence, care and vigilance as the hazard to life and limb and property de-

manded. If he has failed so to perform his duty, and the injury of which he complains is the result of such failure on his part, he is the victim of his own fault, and has no right to complain of another. In such case he could not recover. We know of no law defining the various duties of the conductor of a train of cars. It is a question of fact, and you must answer it from the evidence in the case. This, then, will be your first inquiry— What were the duties of A. C. Barber as conductor? Secondly—Did he perform those duties? Third—If he did not do his duty, are the injuries of which he complains the result of his omission of duty? What were his duties in relation to the machinery composing his train at the time of receiving it at Sandusky or Kenton? Did the company rely upon him to examine, detect and report defects in the material of the train, and did they give him to understand that this was a part of his duty, or is this a settled fixed part of the duties of all freight train conductors? Did the company rely upon the conductor to perform this service? Did the conductor, by the contract which placed him in the employ of the company, either expressly or by implication of law growing out of the peculiar relation of himself to the company, undertake to perform this service? If he did so undertake and failed to perform these duties, and his injury is the result of such failure to perform, he is the victim of his own fault. He cannot complain of another. In such case he will not be entitled to recover. Make this same inquiry as to the duties of the plaintiff in relation to the material of his train in its passage from the point where he received, to the point where he discharged it. Did he, either expressly by the terms of his contract or by implication of law growing out of his peculiar relation to the company, undertake to bestow certain care, diligence and attention upon the machinery and other material composing his train? If there was such an undertaking on the part of the plaintiff, did he perform it? If he did not, and his injuries are the result of such omission on his part, he has no reason to complain, and will have no right to recover. So inquire what were the duties of this plaintiff toward the machinery in all positions. What were his duties at Kenton? If his injury is the result of

his own negligence or omission of duty, he cannot recover. What was his duty when he saw the detached cars following the train ? If to reach the brake, break it down, and stop the cars, was an act calculated to save the train or machinery from impending danger and probable injury, or to prevent injury to the men on the engine, it was a praiseworthy and manly act on his part to make the effort, and if, in that effort, he sustained his injuries through no fault or negligence or carelessness of his own, but by the fault or omission of the company, in such case he would have a right to recover. But though he sustained his injuries while engaged in this laudable effort to save life and property, yet if they were the result of his own negligence or want of care, he cannot recover. The railroad company employed Barber to conduct a freight train. By that contract, what did the company undertake to do ? The first thing the company bound itself to do was to furnish the plaintiff with a train to run ; a *proper* train, having all the necessary machinery and appendages of a good and safe kind, and believed by the company, after a careful and skillful examination, to be good and safe to the employees, both in style and structure, according to the danger and hazard of the business. She undertook to furnish said train and machinery in good and safe condition ; she undertook to devote reasonable care, attention and diligence to the machinery and other material that made up the train ; and this either by the plaintiff or some other person. She undertook to furnish the train with such number of hands, possessing reasonable skill, as were necessary to the safe conduct of the train. She agreed, in short, that everything necessary for the conduct of the train with safety to the conductor, should be done on her part. And finally, she undertook to be responsible to Barber for the negligence and carelessness of certain of her employees, through which negligence or carelessness an injury might result to him. And in the discharge of every one of these undertakings she was to use reasonable and proper care, diligence and skill. And what is reasonable care and skill, depends much on the nature of the enterprise. That which would be reasonable care in driving a team of steady road horses, might not be so in driving

The Mad River & Lake Erie R. R. Company v. Barber.

a pair of unbroken, fractious colts. That which would be reasonably skillful and careful in providing a lock for a road wagon, *might* not be so in providing a brake for a train of cars. The reasonableness of the care, skill and diligence must depend altogether on the nature of the enterprise. When a party puts a dangerous body in motion, the care, skill and diligence required, in order to be reasonable, must be of a high order. If the one is very dangerous, the other must be of a very high order. Where the one is most dangerous, the other, to be reasonable, must be of the highest order. Now inquire of the evidence whether the railroad company has performed these undertakings. If she has performed these, and all other undertakings on her part; if she has been guilty of neither carelessness, negligence or want of skill, she is not liable."

And the court further instructed the jury as follows:

" That as to the instruction first requested by the defendant as aforesaid, the court would not give the same in the form requested, but would give it with this modification : that though the defendant was not bound to provide brakes of any particular construction, yet that it was bound to furnish good brakes of a safe kind, provided brakes were at all necessary (which was a question depending on the evidence). And that it was not a question between the kinds of brakes; but were brakes necessary to the safe conduct of the train, and if so, were those furnished such as reasonable skill, diligence and care would have furnished as safe brakes. That as to the instruction secondly requested by the defendant as aforesaid, the court refused to give the same, and said to the jury *that such was not the law in Ohio*, unless by the express or implied terms of his contract it was a part of his duty to determine the number, care and skillfulness of the trainmen and brakemen, or to employ or provide them ; if such were his duty, and he failed to perform it, it furnished no ground of recovery ; *otherwise, if this duty devolved on other employees of the company, not under control of plaintiff.* That as to the instruction thirdly requested by the defendant, as aforesaid, the court refused to give the same, in manner and form as requested, but instructed the jury that if the plaintiff and Pratt had exchanged

trains, without the consent of the defendant, then the defendant was not liable for Pratt's negligence ; but if said exchange was made with the defendant's consent, or under her direction, then Pratt was simply the agent of the company, for the delivery of the train to Barber on the road, when they might meet, and in that case *defendant was liable for the negligence of Pratt,* exactly in the same manner, and to the same extent, she would have been liable for the negligence of any other agent, whose duty she had made it to deliver to plaintiff a reasonably safe train and machinery. That as to the instruction fourthly requested by the defendant, as aforesaid, the court refused to give the same in its terms, but said to the jury that the defendant would not be liable for such defects as it could not by the exercise of *reasonable* care have detected, and what was *reasonable care, in this case, had been already explained.*

" That as to the instruction fifthly by the defendant above requested as aforesaid, the court refused to give in its terms, but said to the jury, that as to the care which the defendant was bound to exercise, it must be reasonable, and what was reasonable care, under the circumstances, they had already explained them ; that what was reasonable, as before stated to them, depended on the nature and hazard of the enterprise or business in which they were engaged. That as to the instruction by the defendant sixthly requested as aforesaid, the court refused to give the same in its terms, but instructed the jury that it was right, provided it was the plaintiff's duty to examine for, and detect these defects, and whether it was his duty thus to do, was a *question of fact* for the jury to determine, and was it a part of his duty, or was it no part of his duty ? Was it the duty of other employees, over whom plaintiff had no control ? That as to the instructions seventhly by the defendant requested as aforesaid, the court refused to give the same, in its terms, but said to the jury, that if the plaintiff's neglect of his duty caused the injury, or was such as that, without it, the injury would not have happened to him, then the plaintiff could not recover. But though he might have been guilty of negligence, yet if the accident was unavoidable, by reason of defendant's fault or omission, and must have happened

though plaintiff had done his entire duty, in such case plaintiff would have a right to recover, and that whenever the plaintiff's right to recover was spoken of in this charge, it was under the limitations and instructions contained in the charge as an entirety."

To all of which instructions and charge, so given by the court to the jury, and to the refusal of the court to instruct and charge the jury as requested by the defendant, the defendant excepted.

The verdict of the jury was in favor of Barber, for nine thousand five hundred dollars.

Thereupon the defendant filed a motion for a new trial, and the same was overruled by the court, and judgment entered on the verdict.

Upon this state of facts, the plaintiff in error makes an assignment of errors, claiming in substance :

1st.   That the petition of the plaintiff below does not state facts sufficient to constitute a cause of action ; or rather, that from said petition itself it appears that the plaintiff below was not entitled to recover.

2d.   That the court below erred in its charge to the jury, and erred in refusing to charge as requested by the defendant below.

*W. F. Stone* and *N. H. Swayne*, for plaintiff in error.

*C. K. Watson* and *J. C. Lee*, for defendant in error.

Bartley, C. J.

The judgment sought to be reversed was recovered in the district court by Barber, the defendant in error, for an injury received by him while employed and acting as the conductor of a train of freight cars on the railroad of the plaintiff in error.   The alleged ground of the company's liability was :

1st.   Failure and neglect to provide the train with the necessary number of hands to manage and control the same ; and

2d.   Failure and neglect to furnish the train with necessary, suitable and safe machinery for running and managing the same ; and for negligently and wrongfully furnishing the train with de-

fective and unsafe machinery, and cars with platforms unsuitable and unsafe to stand on in working the said machinery.

The main and leading questions presented in this case, therefore, arise out of the duties and obligations created by the relation between Barber as the conductor of a train of cars, and the company as his employer. This relation, both as to its nature and its legal incidents, differs somewhat from that of a subordinate hand on the train, and the company; it also differs from that of a passenger on a train of cars, and the company; and it also differs from that of a person receiving an injury on the railroad, who is neither a passenger nor an employee. As between the company, and a person who is neither a passenger nor an employee, there is no relation arising out of any privity of contract; consequently any liability of the former, for an injury to the latter, can be determined only by that pervading principle of social duty founded on the common law, that every person must so conduct his own affairs as not to injure the rights of another, expressed in the legal maxim, *sic utere tuo ut alienum non lœdas.*

As between a passenger and the railroad company, the duty of safe conveyance is measured by a severe rule arising out of the nature of the obligation, and a principle of public policy. Those who ordinarily intrust themselves, in traveling, to the agents and vehicles of railroad companies, have but limited means of information as to either the competency or fidelity of the agents, or the sufficiency of the cars and machinery; and passengers undertake to run those risks only, which cannot be avoided by the *utmost degree of care and skill*, on the part of the carrier, in the preparation and management of the means of conveyance. Such is the doctrine both of the English and the American courts. *Hegeman* v. *The Western Railroad Corporation*, 3 Kernan R. 9; Story on Bailm., secs. 601, 602; 2 Greenl. Ev., sec. 222.

The nature of the relation between the company and its agents and employees, being essentially different from that between the company and passengers, the duties and obligations arising out of it are different, and consequently give rise to a different rule of liability. The company can act only through its agents and employees, who are engaged in a common enterprise, in which they

share the responsibility, and in which the safety of each depends much on the efficiency with which every other performs his duty. They have opportunities of observing the conduct of each other, and requiring fidelity by reporting delinquencies; and they have means of information as to the sufficiency of the machinery, and the condition of the road, as well as opportunities of adopting precautions for safety not ordinarily open to passengers. And they make their engagements to serve the company in view of the natural and ordinary hazards incident to the business, and must be presumed to stipulate for a proportionate compensation.

It was adjudged in the case of *The Little Miami Railroad Company* v. *Stevens*, 20 Ohio Rep., that when an employer places one person in his employ, under the direction of another also in his employ, such employer is liable for injuries to the person placed in the *subordinate* situation, by the negligence of his superior. And this doctrine was reviewed and affirmed by this court in the case of *The C. C. & C. Railroad Company* v. *Keary*, 3 Ohio St. Rep. 201, upon the ground that the injured agent or employee, at the time of the injury, was acting under the immediate control and direction of his superior, by whose neglect the injury was received; and thus occupied a position which precluded him, for the time being, from exercising his own discretion in looking to and providing for his own safety.

The principle settled in these cases, however, is distinguishable from that which governs in the case before us. Here Barber, at the time of the injury, was not under the direction or control of any superior officer or agent of the company. He had the control and charge of the train himself as its conductor. True, the train and the road were the property of the company. But the charge and use of the train were committed to Barber, who was at the time, so far as that train was concerned, the sole representative of the company. This superintending charge gave him power to regulate the speed of the train, to run it or to stop it, and to control and direct it in any emergency according to the dictates of his own judgment. True, he was to use and manage the train in accordance with the rules and regulations prescribed by the company; but in doing so, he was not under the directing

authority of any superior or superintending agent of the company. The responsibility of his position imposed upon him the duty of reasonable care and diligence, not only in the management of the train, but also in the due inspection of the cars, machinery, and apparatus committed to his charge; and in case of any insufficiency in the number of the hands, or delinquency in the performance of duty by the hands on the train, or in case of any defect in the cars or machinery, to report the same to the company, and forthwith take the necessary and proper precautions for the safety of the train, and the persons upon it.

Under these circumstances, what risks did Barber assume to run, and what duties and obligations rested upon the company? The business was hazardous, and he undertook the employment, and made his engagement, in contemplation of the perils incident to it. The company did not insure him against accident, or those unforeseen perils which due and proper care and diligence could not provide against. Injuries from accidents which the utmost stretch of human skill and foresight cannot provide against, are incident to all situations and conditions in life. And because one person is in the employ of another in a hazardous business, it does not follow that the employer must stand responsible for damages resulting from injuries received through accidents which a proper degree of diligence and skill cannot guard against.

The company was presumed to use reasonable and ordinary care and diligence, in the selection and employment of competent and suitable agents and employees; in keeping its road in repair; and in providing it with sufficient and suitable cars and machinery for its use. And in Barber's undertaking to act as the conductor of this train of freight cars, he may be presumed to have stipulated in contemplation of the performance of this reasonable and ordinary duty on the part of the company; and to have undertaken to have incurred all the risks and hazards of the business, on that condition. The company, therefore, became responsible to him only, in case of an injury received by him through a neglect of that reasonable and ordinary care and diligence in the performance of its duty, which it was presumed to exercise, and in contemplation of which, its employees make their engagements.

And this neglect, in order to create a liability on the part of the company, must be the wrongful act of the company as distinguished from the neglect of a mere operative or agent of the company. For, however as to passengers, or persons who are neither passengers, agents or employees, a railroad company may be responsible for injuries done by the neglect or misconduct of its agents or employees, while engaged in the business of the company, it appeais to be settled, both in England and in this country, that the company is not liable to an operative or agent in its employ, for injuries resulting from the carelessness of another operative or agent, when both are engaged in a common service, and no power or control is exercised by the one over the other. *C. C. & C. Railroad Company* v. *Keary,* 3 Ohio St. Rep. 201; Redfield on Railways 386. And this doctrine, that the company is not liable to one employee for injuries received from another in the same business or service, it is said, tends to make all employees anxious, watchful, and interested for the fidelity of each other, and it is one of the risks in view of which every employee enters the service of the company. But this doctrine, that the principal is not liable to one agent or servant for an injury arising from the neglect or misconduct of other agents or servants, must be received with this qualification, that the principal is without fault in the selection and employment of the other agents and servants, or in continuing them in their places after they have been shown to be incompetent or unsuitable persons. Of the cases in which it has been held that a principal is not liable to one agent or servant for an injury caused by the wrongful act of another agent or servant engaged in the same business, it was said by the court of appeals, in New York, in the case of *Keegan* v. *The Western Railroad Company,* 4 Selden R. 180, that "They are applicable only where the injury complained of happened without any actual fault or misconduct of the principal, either in the act which caused the injury, or in the selection and employment of the agent by whose fault it did happen. Whenever the injury results from the actual negligence

36

or misfeasance of the principal, he is liable as well in the case of one of his employees or agents, as in any other."

It appears that a principal is liable in damages for an injury sustained by his agent or employee while in his service, only where the injury is the result of an omission of that reasonable and ordinary care on the part of the principal himself in the discharge of his duty, which persons of ordinary prudence are presumed to exercise in that particular pursuit. Where, therefore, an agent or employee of a railroad company has been injured by means of the neglect of ordinary diligence and care on the part of the company, either in not employing a sufficient number of hands to manage and safely run a train, or in employing, or continuing in the employment of the company, incompetent and unsuitable persons, or in not keeping the road in proper repair, or in providing the road with insufficient, defective, and unsafe machinery and cars;—in either case, the company is liable. But the company would not be liable, even in any such case, providing the agent or employee was himself guilty of neglect or misconduct, at the time, which contributed to the injury; or providing the agent or employee, with a full knowledge of such omission of duty or neglect on the part of the company, waive the matter, by continuing in the service of the company without taking the precaution, or using his exertions, to have the omission or difficulty remedied. For if the agent or employee of the company waive the omission of duty on the part of the company, he takes the risk upon himself, and if damaged, he must abide by the maxim *volenti non fit injuria.*

A careful examination of the duties and obligations incident to the relation of employer and employee, touching the questions in the case before us, leads to the following conclusions:

1st. That the agent or employee of a railroad company undertakes his engagement in contemplation of the ordinary hazards of the business, and upon the incidental condition, not that the company will insure him against accidental injuries, but will exercise reasonable and ordinary care and diligence in the discharge of its duties in regard to the business.

2d. That the company is not liable to one agent or servant for an injury resulting from the negligence or misconduct of another agent or servant while engaged in a common business with him, but without any superior authority or control over him.

3d. But where the company itself is in fault as to its own peculiar duties, and by means of its neglect of that reasonable and ordinary care which it must be presumed to exercise in regard to its own business, an injury is occasioned to an agent or employee, the company is liable in damages, unless the agent was also in fault, and his negligence or misconduct contributed as a proximate cause to the injury.

4th. If, however, the agent, with a full knowledge of the omission and neglect of ordinary care on the part of the company, continues on in the business of the company, without any correction of such omission or neglect, he thereby waives his own rights, and takes the risk on himself.

The application of these conclusions to the case before us, removes all difficulty in the determination of the main questions presented.

The first ground of neglect charged upon the company, is the failure to furnish the train with a sufficient number of hands. It appears from the testimony of the engineer, that there was neither a brakeman nor a trainman on the train, on the day of the accident; that the train never had a brakeman, and that for about four days or two trips it had been without a trainman; and he further testifies that there ought to have been one trainman and two brakeman on the train. In the absence of either a brakeman or a trainman, the conductor had of course to perform, to some extent, the duties of both; and he was in the act of performing the duty of one of these subordinate hands when he received the injury complained of.

It appears, therefore, that the company was guilty of a neglect of due and reasonable care, in the failure to supply the train with a sufficient number of hands for its safe and proper management. But in the charge and control of the train, Barber was the directing agent, and sole representative of the company.

It was his duty to notify the company of the want of sufficient hands, and to require the company to furnish them. It is not averred in the petition, nor does it appear in the proof, that the company had a knowledge that this train was running without a sufficient number of hands, or that the conductor had either given the company notice of the insufficiency of hands on the train, or required them to be supplied. So far, therefore, as the deficiency in the number of hands upon the train contributed to the injury, the maxim, *volenti non fit injuria*, applies. It is an old and settled rule of the common law, that no one can maintain an action for a wrong where he has consented or contributed to the act which has occasioned it.

The other ground, upon which the recovery was sought below, was the alleged failure and neglect of the company to furnish sufficient and safe machinery and cars ; and the alleged wrongful and negligent act of the company in actually furnishing the train with defective, unsafe and insufficient cars and machinery.

It appears that there was a defect in the link which connected the third and fourth car of the train back of the engine, on account of its not having been sufficiently welded in the making, by means of which a separation in the train took place. It appears further, that the brake on the first car of the detached portion of the train was in a bad condition for want of connection between the brake blocks ; that the brake chain was defective, and broke when Barber was attempting to use it to stop the detached portion of the train on a down grade. The top of the brake-staff was a cross-bar, and the platform for a person to stand on to work the brake, was claimed to be insufficient and unsafe. By means of these defects in the cars and machinery, the accident occurred by which the defendant in error received the injury.

The duty imposed on the company by the relation occupied by the conductor, was to use reasonable and ordinary care and diligence in furnishing him with sufficient, sound and safe cars and machinery for the train. This duty required not only that the company should use proper skill and diligence in procuring and furnishing sufficient and safe cars and machinery, but also when

notified that they had become insufficient and unsafe, or when they had been in use as long as they could with safety be used, to take them off the road until repaired and made sufficient and safe. And for any injury sustained by an agent or employee of the company, from any neglect of this duty, the company would be liable. But the relation occupied by the agent or employee, imposes a reciprocal duty upon him. It was the duty of Barber, as the conductor of this train, to use ordinary and reasonable skill and diligence on his part, not simply in the management of the train, but also in supervising the due inspection of the cars, machinery, and apparatus, as to their sufficiency and safety, while under his charge; and on the discovery of any defect or insufficiency, to notify the company, and to take the proper precautions to guard against danger therefrom. And if he was injured by the negligence of the company in furnishing, or continuing to use defective cars and machinery, yet if his own neglect of duty in the management of the train, or due inspection of the cars and machinery in his charge, contributed as a proximate cause of the injury, he could have no right of action against the company for damages; or if he knew of the defects and insufficiency of the cars or machinery, and without taking the necessary and proper precaution to guard against danger, continued to use them, he took upon himself the risk, and waived his right as against the company. If there was no neglect of due and ordinary care and diligence on the part of the company furnishing, or continuing the use of the cars and machinery, and the injury was caused by latent defects, unknown alike to the company and to the conductor, and not discoverable by due and ordinary skill and diligence in the inspection of the cars and machinery, it would be a misadventure falling among the casualties incident to the business, and for which no one could be blamed. But if the defects which caused the injury, were actually unknown either to the company or the conductor, and not discoverable by due and ordinary inspection, and yet were such as resulted from a neglect of reasonable and ordinary care and diligence on the part of the company, either in procuring the cars or machinery to be made, or in continuing their use on the road beyond the time when they

could be safely used, the company would be liable in damages for the injury. And whether such was the case or not, was a matter of fact for submission, under proper instructions, to the jury, in the court below.

The view of the law here expressed as applicable to this case, and in which we all concur, is at variance with the instructions given by the court below to the jury, in various particulars.

The charge of the district court to the jury, taken in its whole context, together with the instructions asked by counsel and refused or qualified by the court, gave an erroneous view of the law which governs this case.

The court instructed the jury as to the rule of liability applicable to the company, without the proper qualification where the fault of the conductor contributes as a proximate cause to the injury, or where the conductor, with a knowledge of omissions and neglect on the part of the company, waives its obligations, and takes the risk upon himself.

And the court instructed the jury as to the company's liability, as follows: " She undertook to furnish said train and machinery in good and safe condition ; she undertook to devote reasonable care, attention and diligence to the machinery and other material that made up the train ; and this, *either by the plaintiff* or some other person. She undertook to furnish the train with such number of hands, possessing reasonable skill, as were necessary to the safe conduct of the train. She agreed, in short, that everything necessary for the conduct of the train with safety to the conductor, should be done on her part. And finally, she undertook to be responsible to Barber for the negligence or carelessness of certain of her employees, through whose negligence or carelessness an injury might result to him. And in the discharge of these undertakings, she was to use reasonable and proper care, diligence and skill." And in this connection, the court charged, that " that care, skill and diligence, in order to be reasonable when a party puts in motion a most dangerous body, must be of *the highest order*." And the court continued in these words : " Now, inquire of the evidence whether the

The Mad River & Lake Erie R. R. Company *v.* Barber.

railroad company *has performed these undertakings.* If she has performed *these, and all other undertakings* on her part; if she has been guilty of neither carelessness, negligence, or want of skill, she is not liable."

Now the court, in thus charging, did not state the duty and obligations of the company with accuracy; did not distinguish between general acts of neglect on the part of the company, and negligence contributing either as a *remote* or a *proximate* cause to the injury; but by direct implication gave the impression, that if the company had neglected any of its undertakings, either those mentioned or others, or been guilty of any act of negligence or want of skill, whether the same was connected with, or contributed as a proximate cause, to the injury or not, the company was liable to this action. The charge in this respect was calculated at least to mislead the jury.

The court gave the instruction that the company "undertook to be responsible to Barber for the negligence and carelessness of certain of her employees, through whose negligence or carelessness an injury might result to him," as a rule of law applicable to this case, without further qualification or explanation. As Barber was not acting under the immediate direction or control of any superior officer or agent of the company at the time, this instruction, as applied to this case, was directly at variance with the doctrine of the case of the *C. C. & C. Railroad Company* v. *Keary,* 3 Ohio St. Rep. 201.

The court also erred in instructing the jury, that what constituted "the various duties of a conductor of a train of cars," incident to his position, was a question of fact to be found by the jury from the evidence. Now what constitutes negligence in regard to a duty enjoined by any particular relation or employment, is usually, if not invariably, a mixed question of law and of fact; but what duty the law implies as incident to any particular relation or employment, is always a question of law for the determination of the court.

It is also assigned for error that the petition does not set forth sufficient legal grounds to constitute a cause of action.

It is essential that the plaintiff, in order to lay a sufficient foundation for a recovery and judgment for an injury received by him while acting as the conductor of a train of cars, should aver, or show in his petition, in addition to the allegation that he had no knowledge of the insufficiency or defects which were the alleged cause of the injury, that he had exercised due care and diligence in the use, and also in the examination and inspection of the cars and machinery belonging to the train while the same was under his charge and direction. The petition contains no such averment, and on this ground is fatally defective.

Other questions are made in this case, but it is not deemed necessary to express the views of the court upon them.

*Judgment of the district court reversed, and cause remanded.*