Suture, O.J.
The grounds for the motion for a new trial not appearing, and all the evidence given.upon the trial not being set forth in the. bill of exceptions, we can not here regard the exception to the overruling the motion for a new trial. We are, therefore, confined to the first two exceptions of plaintiffs in error.
The question, then, for our consideration is, did the court below err in either'charging, or refusing to charge, the jury ? Was the charge given to the jury by the court legal and proper, or otherwise; and were the instructions, or any of them, requested on the part of the defendants below, and refused by the court, legal and proper?
*487 In the case of Gatrick v. Wason, 4 Ohio St. Rep. 566, this court held it to be a general rule, that an employer who provides the machinery, and oversees, and controls its operation, must see that it is suitable, and that if an injury to the workmen happen by reason of the defect, unknown to the latter, and which the employer, by the use of ordinary care, could have cured, such employer is liable for the injury. And in the case of the Cleveland, Columbus & Cincinnati Railroad Company v. Keary, 3 Ohio St. Rep. 202, it is said in such a case “ the skill and care must be reasonable, and it is not reasonable when it does not furnish at least ordinary security against injury to others. If he (the employer) is found wanting in this, and injury ensues, he has failed to perform his duty to his fellow man, and the right to receive, and the duty to make reparation, immediately arise.”
The case of M. R. & L. E. R. R. Co. v. Barber, 5 Ohio St. Rep. 541, is, perhaps, still more in point to illustrate the questions arising in this case. That was an action brought against the company by the conductor to recover for injuries he received on the train, alleged to have been occasioned by the negligence of the company in having suffered certain defects in the machinery or fixtures of the train. And this court held that the employer — the company — in such a ease, was not to be held as a guarantor of the sufficiency and safety of the cars and machinery of the train; but as responsible only where the injury is without fault on the part of the employee, and the result of the neglect of that ordinary and reasonable care and diligence, in furnishing sufficient and safe cars, and machinery for the train. The court, also, in that case held, that this rule of reasonable care and diligence on the part of the company, was complied with by furnishing such employee with such safe and sufficient cars and machinery for the time as are most common and usual in' the business of railroad companies. And in that case, where the injury resulted, as in this, from the giving way of a defective brake, this court held that if the defects in the brake were, latent and not discernable by ordinary care,, and were unknown, the injury thereby occasioned the employee must be regarded as result *488 ing from a casualty incident to the-business, and thát no liability thereby attached to the company.
And the doctrine thus heretofore expressed by this court, in the cases referred to, seems to be in accordance with the holdings of the courts in England, as well as those of other states in this country.
The case of Priestly v. Fowler, 3 Mees. & Welsh. 1, decided in the Exchequer chamber in 1837, appears to be the leading English case upon this subject. That was an action brought by the servant against his master or employer to recover for injuries sustained by reason of the breaking down of a van or wagon unfit for use, which was charged to have been carelessly and negligently supplied by the master, and upon which he, the servant, had been directed to proceed to carry the goods of his master. The allegations upon which a recovery was sought, were that it was the duty of the defendant to use due and proper care that said van should be in a proper state of repair, that it should not be overloaded, and that the plain.tiff should be safely and securely carried thereby, and that the defendant neglected to use proper care, etc., and in consequence of the neglect of duty by the defendant that the van broke down, and plaintiff was thrown with violence, and his thigh fractured, etc. Plea not guilty. Upon a motion in arrest of judgment, a rule was obtained to show cause why the judgment should not be arrested upon a verdict at the assizes', in favor of the plaintiff for £100. And on hearing, in the court of Exchequer chamber, Lord Abinger, C.B., in delivering the opinion of the court that the judgment ought to be arrested, among other things said: “ But in truth the mere relation of the master and the servant never can imply an obligation on the part of the master to take more care of the servant than he may reasonably be expected to do of himself. He is no doubt bound to provide for the safety of his servant, in the course of this employment, to the best of his judgment, information and belief,” etc.
The same views, have been again and again expressed in subsequent decisions. Thus, in the case of Patterson v. Wallace, 1 McQueen, 748, it is said by Lord Cranworth, C., that *489 “ when a master employs a servant in a dangerous character, he is bound to take all reasonable precaution for the safety of that workman. ******* It ig the master’s duty to be careful that his servant is not induced to work under a notion that tackle or machinery is staunch or secure, when in fact the master knows, or ought to know, that it is not so ; and if from any negligence, in this respect, damage arise, the master is responsible.” And this ruling seems to have been followed in the case of Brydon v. Stewart, 2 McQueen, 30.
In the case of Roberts v. Smith, 2 Hurlstone & Norman Exch. Rep. 213, which was an action brought by the employee against his employer to recover for injuries occasioned by the fall of a defective scaffold, upon which he ivas placed by his employer, Cockburn, C.J., remarked, that “ the question is not whether the master believed the put logs sufficiently strong, but whether he was justified in believing them to be so.” And speaking upon the same point, Wightman, J., said:. “The only duty is to take reasonable care in providing proper materials and servants.” And again, in the case of Ormand v. Holland et al., 96 Eng. Com. Law Rep. 102, in queen’s bench, it was expressly held, that “ a master is responsible to his servant for an injury received in the course of his service, if it be shown to have been occasioned by the personal negligence of the masterand that such negligence may be charged upon the master by showing either his personal interference to be the cause of the accident, or that he negligently retained incompetent servants, whose incompetency was the cause of the accident, but that in the absence of a special contract, the master is not liable for an accident not proved to have been occasioned by his personal negligence. The action was brought t.o recover from his employer for injuries received by the plaintiff in a fall from a defective ladder. On the trial before Lord Campbell, C.J., at the Middlesex ’ sittings, after Michaelmas term, it appeared that the defendants are builders on a large scale, engaged in many works, among others that of erecting a church, and that the plaintiff was working for them as a bricklayer there. The plaintiff was going up a ladder supplied by defendants, when *490 one of the rounds broke; he fell and was injured. There was some evidence that the ladder was defective, and that the workmen had previously complained among themselves, but no evidence that this was brought to the knowledge,of the defendants, or even of their head servants. On the part of the defendants, evidence was given that they were employed by the general foreman, who also appointed the foreman to superintend each particular work, including the foreman at the church. All implements used by the defendants at any of their works were brought from a yard, in which the implements were kept. The gate-keeper at the yard was appointed by the general foreman of the defendants; and it was the duty of the gate-keeper to examine all plant before it went out' of the yard, and to see that it was fit for use. Both the foremen, at the church and the gate-keeper gave evidence that in their opinion the ladder was sound, and that the breaking of the round must have been owing to some unexplained accident.” • ■
Under this state of facts, Lord Campbell, C.J., ruled that there was no evidence to go to the jury, and directed a verdict for the defendants, subject to leave to move to enter a verdict for £5.
A rule was obtained in Hilary term; • and on hearing in support of the rule, Erie, J., said: “No doubt the master is responsible if he^is shown to have been personally negligent; but the evidence seems to be that the defendants, personally, were free from all blame.” It was added by Lord Campbell, C.L.: “We all agree that the action is not maintainable. There was no evidence of personal negligence : the builders used due and reasonable care to have competent servants; and I think they used more than ordinary care, and took extraordinary care that the plant should be sufficient, etc.” Wightman, J.: “ The question is, whether the misfortune which befell the plaintiff arose for want of proper care in the defendants, either in choosing their servants or examining the plant.” Erie, J.: “ On these facts the defendants have shown that they took due care. The question of law, therefore, is, whether the master warrants the soundness of the *491 materials. And he does not.” Crompton, J.: “I think that the rule of law laid down by~ Mr. Hill, is accurate, namely, that the master is not liable unless there be personal negligence on his part, which negligence may be either in personally interfering in the work or in selecting the servants who do interfere. * * * In the present case there seems to have been no evidence of any negligence : it is enough to say, that there certainly was no evidence of personal negligence of any kind.”
The American cases will be found, very generally, to express the same doctrine.
In the case of Hallower v. Henley et al. 6 Calf. Rep. 209, the servant had brought his action to recover damages for injuries sustained by him while in the employment of the defendants, who were contractors for the erection of buildings in Sacramento. The plaintiff, in his declaration, averred that the defendants so carelessly and negligently erected the scaffolding, used for the laborers in erecting the building, that it gave way with the plaintiff, whereby he sustained the injuries for which he asked damages. The court express the rule of law to be such, that the workman is liable for all accidents occurring in the course of his employment which are not induced by the carelessness or improper conduct of the'employer. In other words (say the court), the master is bound to use reasonable care and diligence to prevent accident and injury, etc.
In the case of the Indianapolis & Cincinnati Railroad Co. v. Love, 10 Ind. Rep. 554, the court held that there is no implied warranty generally, of the completeness or fitness of the road or rolling-stock, as between the company and their employees. But there are many exception's, say the court. Eor instance, if a defect existed in the road, which was known to the company, rendering the road unsafe, and they should suffer their employee, in ignorance of‘the defect, to attempt to pass, and he should thereby receive injury, etc. See also, the cases, Farwell v. B. & W. R. R. Co., 4 Metc. 49; Carle v. B. & P. Canal & R. R. Co., 48 Maine Rep. 269; Smith v. The N. Y. & H. R. R. R. Co., 19 N. Y. Rep. 127; and Wright *492 v. N. Y Cent. R. R. Co., 28 Barb. 80; Frazier v. Pa. R. R. Co., 38 Pa. St. Rep. 104; Hayden v. The Smithville Manufacturing Co., 29 Conn. Rep. 548.
From all which authorities, English and American, it is apparent that the rule, heretofore expressed in this state in the cases referred to, is the same generally recognized in other courts. And, in view of the authorities thus referred to, as well as from a regard to the true relation of the parties, the dictates of justice and good sense, as well as considerations. of public policy, seem to require that the rule adhered to with such uniformity by other courts, should not be departed from by this.
It is true, this rule was held, in England, in cases differing from the .present in one particular. The van, the scaffold, and ladder, were each designed merely to accommodate and aid the servants of the employer, in the performance of their work, as convenient or necessary facilities for its completion. But, it is insisted, that the reason of the rule does not include such a case as is presented by the record before us.
In the cases referred to in England, it must be conceded that the rule was properly expressed, and may well be sustained in similar cases, from the fact that the rule arose out of the implied understanding between, the employer and employee, that they should each be reasonably regardful of the interests of the other. As there is an implied agreement, on the part of the servant, that he will faithfully serve and be regardful of the interest of his employer during the term of his service, a like implied agreement arises, on the part of the master, that he will be reasonably provident and regardful for the safety and well-being of the servant. While, therefore, it is the duty of each, the employer and the employee, to be provident and regardful of the interest of the other, and careful to respectively discharge his duty to the extent reasonably implied by the relation of employer and employee, it must be admitted, that there is no warranty implied, that the faithfulness of the servant shall always secure the best interests of the employer; nor that the implied reasonable regard *493 of the employer for the safety and well-being of the employee, shall always secure his safety and well-being.
Under the application of this rule of duty, so implied by, and arising out of, the relation of the parties, in the English cases referred to, it must be admitted that the master could not, within such rule, be held to warrant the safety of the servant upon the van, the scaffold, or the ladder; but only that he would use all reasonable care to secure the safety of the servant in each of those positions in which so placed by his direction. And it must also be admitted that such reasonable care, on the part of the employer, is a no higher degree of care, under the existing circumstances of each case, than what the common sense of mankind should think justly due from the employer, and reasonably to be expected on the part of the employee. And. as employers do not take such extraordinary care to provide for their own use scaffolds, vans, ladders, etc., as facilities for doing their work, so perfect as to always secure safety against injuries resulting from their defects, it would be unreasonable to expect a higher degree of care from the master, for the safety of his servant, than for the safety of himself.
But it is insisted, for reasons peculiar to the case itself, that in the case at bar there was the same extraordinary care due the employee, the brakeman, in regard to the perfection of the machinery on the train, that was due from the company to the passengers on the train.
The company, it is admitted, are, as common carriers, bound to furnish the most perfect machinery and cars for the safety of the passengers; and from this fact the conclusion is sought to be gained by argument that quite a different rule should be applicable to the employee in this case from that where the machinery, scaffold or ladder was only for the purpose of facilitating the labors of the employee. The brakeman, it is said, engaged to the company as an employee in the particular business of brakeman on a passenger train. And the contract being in relation to service in that particular place, and each party being presumed in law to know the law, it must be supposed that both the parties knew that it was the *494 legal duty of the company, as common carrier, to furnish as perfect machinery and brakes upon the passenger cars as practicable; or, in other words, to use the highest degree of care in that regard to insure the safety of the passengers, of which the company were in law to be regarded to some extent warrantors. And, therefore, when the employee entered the service as brakeman, to work one of the brakes on such passenger cars, it was reasonably to be implied that the company would furnish such brake to be by him worked as the law made it the duty of the company to furnish upon a passenger car for the safety of the passengers. It is not easy to perceive at first view the fallacy of this argument; and if admitted to be strictly logical, the conclusion would seem inevitably to follow that the employee was entitled, in his capacity of brakeman, to as perfect a brake as a passenger, to whom the general rule required of the company extraordinary care, instead of merely that ordinary care which was due to an employee. ,
But this argument, and the conclusion to which it tends, must necessarily be qualified by the duty of the employee himself, to bring to the discharge of his office as brakeman that high degree of vigilance, prudence, care and promptitude, correspondent to the undertaking of the company as common carrier, which he, as one of the operatives, had undertaken with the others to discharge.
There is still another consideration which must necessarily qualify the right of such employee to claim as due from the company a perfect brake. It appears from the record that the service of the intestate was rendered in common with many other servants, in the business of operating the trains upon the road; and it also appears that it was the duty of certain of the servants so engaged in the common service to inspect the chains of the brakes, and to see to the condition of the-machinery, etc., and take care that the train should in all respects be in a road-worthy condition. If, then, the defect of the chain was owing to the neglect of the co-servant of the deceased, whose duty it was to inspect the chain at the time; for such neglect, his employe!’, the railroad company, *495 could not be held chargeable. Such was the holding of this court in the case of Manville v. C. & T. R. R. Co., 11 Ohio St. Rep. 417. See also Russell v. The Hudson River R. R. Co., 37 N. Y. Rep. 184, and the cases there referred to, to the same effect.
It is unnecessary here to determine, by strict reference to attempted classification, what degree of negligence, whether slight, ordinary, or gross, must be shown on the part of defendants below, in order to constitute in this case a legal liability against them. However ingenious the argument, the conclusion can not be logically arrived at that'the employee upon a railroad passenger train, engaged in operating the train, is entitled to the same care for his safety from his employer, that is due to a passenger upon the train. A person who seeks and engages in any employment, thereby assumes upon himself the ordinary risk, hazard, and danger incident to the place and the duties which, for the consideration agreed upon, he has so agreed to fill and discharge. And this is equally true of employees upon railroad trains, as well as-else-where, and in all other kinds of business, and positions. Whether the employee seek employment in a machine shop, or on hoard a steamboat, upon a railroad train, or to pilot rafts over dangerous rapids, to labor in a powder mill, or to serve upon a whale ship, or upon a voyage of discovery in the Arctic regions; in each and all of the several employments and positions chosen, the employee, by entering the service voluntarily, takes upon himself the hazard and dangers properly incident to the service in which he (engages; and the employer is in no sense, from the relation they so sustain to each other, a warrantor of the safety of the employee. There is neither authority nor reason for holding the employer responsible for the safety of his servant or employee, in the-same sense that a common carrier is for that of the passengers, whose safety, so far as practicable, the common carrier is, by law and public- policy, regarded as having guarantied. Nor is it by any means true, that in such a case of accident and injury to the employee, the law presumes negligence on the part of the employer. Indeed, in an action by a passen *496 •ger to recover of a railroad company for injuries sustained upon the train, the burden of proof would be upon the plaintiff to show that the injury so received by him was the result of carelessness on the part of the common carrier, if the charge of carelessness in the petition, as in this case, is denied by the answer. The general rule that a party can only recover according to his allegations and proof, necessarily imposes upon him the burden of proof of every material allegation denied by the adversary party. Carelessness on the part of -the common carrier, being as material a fact, as the injury received by the passenger, to authorize a recovery, when both are denied, it is as incumbent upon the plaintiff alleging both, to prove the one as the other. In proving the injury, the plaintiff, it is true, may, and often does, prove such circumstances, under which the injury was received, as ■raise a presumption of carelessness or negligence; and in such a case the burden of disproving the presumption, by explaining the circumstances, so as. to render their existence consistent with the absence of negligence,'would devolve upon the defendant. Holbrook v. Utica & Schenectady R. R. Co., 2 Kernan, 242; Beatty v. Gilmore, 16 Pa. St. Rep. 467.
Indeed, negligence is a term depending so entirely upon the facts and circumstances of each particular case, that very little practical advantage is derived from the common classification, slight, ordinary, and gross. The same degree of care that would have been highly creditable to common carriers, in seeing to a common stage coach being in suitable repair, and road-worthiness, for the safety of the passengers, and that of their employee, the driver, before the introduction of railroad facilities, might doubtless be regarded as most culpable negligence of duty, on the part of a railroad company, in regard to the condition of their passenger trains; not only toward passengers, but even toward their employees who operate the train. And so, too, it may safely be affirmed, a reasonable, care for the safety of the employee, which requires of the employer always an attention, in a measure, commensurate to his exposure to danger, for the reasonable protection and safety of the employee, would evidently require *497 of the employer greater vigilance and care in regard to the road-worthiness of an express train, or even a common passenger train, than of a freight train. Indeed, the care that the law requires for the safety of the employee, is that care which is regarded by the good common sense of mankind, as reasonably due under all the circumstances of the case.
It is hardly necessary, or practicable, to state the degree of care due from the company in this case to the brakeman. It can only be correctly expressed by saying, that it was incumbent upon the company to use all that care and precaution for the safety of the brakeman, that might reasonably be expected of a railroad, company on the part of an intelligent brakeman acquainted with the care and precaution used by other well-conducted railroad companies in like cases.
The charge of the court below to the jury, and the refusal of certain instructions, on the part of the court, to the jury, render the charge of the court, in several particulars, in conflict with those rules of law herein ex-pressed, as applicable to the ease.
The judgment of the superior court is, for this reason, reversed, and the case remanded for further proceedings,
Peck, Gholson, Brinkerhopp and Scott, J J., concurred.