Johnson, J.
If there was evidence tending to support the issue, the court below erred in arresting it from the jury. It is only, where no evidence is introduced by the plaintiff, tending to support the issue, or where it is such as to show clearly. *393 that he has no cause of action, that it is the duty of the court, to direct judgment of nonsuit. But if the evidence introduced is appropriate to the issue, although it may be slight, and not sufficient, in the opinion of the court, to entitle the plaintiff to a verdict, still the jury should be permitted to pass upon it, and it would be wrong in the court to decide a nonsuit.
Such a motion involves an admission of all the facts which the evidence tends to prove, and presents only a question of law, whether each fact, indispensable to a right of action, put in issue by the pleadings, has been supported by some evidence. Ellis v. Ohio Life & Trust Co., 4 Ohio St. 645. The issue made by these pleadings is, whether the corporation is liable for causing the death of Martin Dick ? The defense, in substance, is, that the^railroad company had performed its whole duty in the premises, and is not responsible for the negligence of its employees engaged in running this train, who were fellow servants of Dick, and engaged in the same common employment ; also, that Dick was guilty of contributory negligence.
The petition explicitly charged, that the corporation was at fault in managing and operating the train which ran into, and killed Martin Dick, and that the manner in which it ran this train, was by the default and negligence of defendant, “ and its engineer and conductor in charge of said train.”
The answer says that Dick, being a section boss, “and as such engaged with other employees of said defendant, and especially those in charge of the train in question were,. . . fellow servants and co-employees,” and denies that defendant was guilty (not that these co-employees, including the engineer and conductor, were not guilty). The answer also denies negligence on its part, as to speed of train, failure to give signals at crossing, &c.
The only question before us is, whether there was evidence tending to show the legal liability of the corporation. In examining this point we do not intend to discuss, much less question the principle, established in Whaalen v. The Mad River R. R., 8 Ohio St. 249, that where one servant is injured through the carelessness of a fellow servant engaged hi a common employment, where there is no relation of superior or sub *394 ordinate, and the employer himself is guilty of no fault, such employer is not responsible. That principle was there applied to a case, when a hand engaged in repairing a track, was injured by a hand on the engine carelessly throwing out a stick of wood from a passing train. It was there held, that the track repairer, and a hand on the engine whose duty it was to pass fire-wpod from the tender to the engine, and to cast from the train sticks unsuitable for use, were fellow servants coming within the above rule. This rule has been applied as between employees on trams, in Manville v. C. & T. R. R. Co., 11 Ohio St. 417; Railroad Co. v. Webb, 12 Ohio St. 475; Railway Co. v. Lewis, 33 Ohio St. 196; Railway Co. v. Ranney, 37 Ohio St. 665, and P., Ft. W. & C. R. W. Co. v. Devinney, 17 Ohio St. 197.
The most liberal application of this rule, does not absolve the company from such acts of negligence to the injury of its employees as are not the result of the carelessness of fellow servants. It is therefore the duty of the company to provide suitable and safe machinery and other appliances to operate its train. Railroad Co. v. Webb, supra; Gutrick v. Wilson, 14 Ohio St. 566; C. C. & C. R. R. Co. v. Keary, 3 Ohio St. 202; M. & R. & L. E. R. R. Co. v. Barber, 5 Ohio St. 541. This principle applies to all cases whore the negligence of an employee is imputable to his employer by reason of the fact that in doing the act he is to bo regarded as the representative of his master. In C. C. & C. R. R. C. v. Keary, it was said: “ As corporations act only through their agents and officers authorized to exercise the functions conferred by their charters, there is much force in the view of the late Chief Justice Hitchcock, ‘that the superintendent (and conductor when running a train) of a railroad, ought to be regarded as the proper representatives of the company, and their acts treated as those of the company.’ ” 3 Ohio St. 201-210.
This principle is illustrated in Railway v. Henderson, 37 Ohio St. 552, where it is said that a breach of duty by the master is not one of the risks which a servant assumes in entering hie service. This breach of dut_y may be the employment of other incompetent servants, the failure to provide safe *395 and suitable machinery, or to notify the servant of peculiar dangers known to himself but not to the servant, or in needlessly placing the servant in a place of danger.
In that case, the company was held responsible for injury. to a laborer on a construction train, arising from an order of the superintendent of the company, with respect to the management of a particular train. If the order was an unreasonable one, it was held to be no answer to say, that a fellow servant of the injured party was also guilty of negligence in its execution. So, when a foreman of a set of hands, whose business was to repair cars on a track in the yard in which it was the custom to make up trains, placed a hand under a car to work, and failed to use reasonable care to protect him from the danger, his negligence was imputed to the company. L. S. & M. S. R. W. Co. v. Lavalley, 36 Ohio St. 221. It was also held that it was the duty of the company to make such regulations or provisions for the safety of its employees as will afford them reasonable protection against the dangers incident to their employment.
In view of these principles, did the court err in holding that there was no default or negligence imputable to the company in running this train, or rather that there was no evidence tending to show that the company was liable ?
The answer avers that every precaution was taken to guard against injury to passengers and employees, and that, by rules and regulations and by other means, it had done all in- its power to accomplish that end, but no evidence of this appears in the bill of exceptions which is said to contain all the evidence.
The evidence strongly tends to show that the locality is a dangerous one, that it was a double or triple curve, and that it was impossible for one engaged at work where deceased was, to see an approaching train but a short distance ; that there were several public crossings which the train had to cross in approaching the place where deceased was at work; that it was in a thickly-settled neighborhood within the city limits; that no signal of the train’s approach was given by bell or whistle, either at these crossings or in approaching the curve, *396 •which he could have heard if given, and that the train was engaged in a brisk race with another train on a parallel road. One passenger says, “ The train was going at a terrific rate of , speed. I was thrown against the window, the velocity of the train threw me.” Another says: “ The train was behind time, and was racing with the O. & M. train, that in going around this curve he was thrown off his feet.” Still another gives a graphic description of this exciting race, and several testify that no signals were given. It was a train in charge of a conductor and engineer. There was no evidence tending to show that this dangerous proceeding was owing to the recklessness of the engineer. Por aught appearing, it was in strict accord with the directions of the conductor and with the rules and regulations of the company. In the absence of proof to that effect, the court below erred in assuming that Martin Dick came to his death by the negligence of the engineer, and in holding, as it must have done, that there was no evidence tending to show that the company was liable.
Whether the company is responsible for the culpable conduct of the engineer, in case it should appear it had exercised proper care for the safety of its employees, or whether, in such a case, the engineer is to be regarded as a fellow servant, and so within the rule in Whaalen's case, we need not now determine. All we now decide is, that the evidence given to the jury tended to make a case of liability against the company, and it was for the jury, under proper instructions, to determine the question at issue.
By the act of 1872 (69 Ohio L. 19) the company is made liable in damages occasioned by a failure of the engineer to sound the whistle and ring the bell at a public crossing on the same level with its track. Whether this is for the protection of travelers on the public way only, or extends to persons working upon the track, we need not now consider. We think that, even in the absence of such a statute, it is the duty of the company to make and enforce reasonable rules and regulations to guard against danger at such crossings and in dangerous places, as this apparently was, and that deceased, when he *397 entered the employment, had a right to expect the performance of that duty.
Judgment reversed, and cause remcmdedfor a new trinl.