### DAVID TOOMEY v. AVERY STAMPING CO.

1. ALLEGATIONS AS TO SERVANT'S KNOWLEDGE OF DANGER.

There is some uncertainty, under the decisions in Ohio, whether the petition in a suit by an employe against his employer for damages for injuries sustained by machinery in defective or unsafe condition, should aver, not only that such employee had no knowledge of the defective or unsafe condition of the machinery, but also that he had no means of knowing thereof.

**2. OBJECTION TO SUFFICIENCY OF PLEADING IN REVIEWING COURT.**

Although it has been held in this state that if the petition is defective in that it does not state a cause of action, the objection may be raised at any time in any court in which the case may be pending, and if the petition is found so clearly defective that no cause of action is stated in it, it is proper for a reviewing court to take that matter into consideration, yet where the objection to the sufficiency of the petition is raised for the first time in a reviewing court, that court should extend to the pleading a liberal construction and should not render any aid in support of the objection beyond what it is compelled to.

**3. VICE PRINCIPAL,—RULE AS TO MASTER'S LIABILITY**

While it is the rule in Ohio that the master is liable for injuries to one servant through the negligence of another to whom control is given, the mere working together, where the advice of one is accepted by another, and where, by superior knowledge, one gives all the advice and direction for the work, is not sufficient to charge the master with the servant's negligence; to have that effect, the direction and authority must be by authority of the master or some one standing in his place.

**4. SERVANT'S AUTHORITY A QUESTION FOR THE JURY.**

Where evidence is introduced tending to show the relation between two servants, it is proper for the court to leave the question whether one was in authority over and had authority to command obedience from the other, to the jury.

**5. DEFECTIVE MACHINERY—RULE AS TO MASTER'S KNOWLEDGE.**

A master's liability for injuries to his servant from defective or unsafe machinery is not limited to cases where the master knew of the defective or unsafe condition of the machinery, but extends to cases where he had the means of knowing and was careless in not knowing thereof.

**6. SERVANT WORKING NEAR MACHINERY—NOT CHARGED WITH NOTICE.**

The fact that an employee had been working near the defective machinery, and might, if he had taken time from his duties, have seen its exact condition, is not sufficient to charge him with knowledge and is not a fair test from which to determine whether he acted prudently or not, especially where it appears that none of the other employees, coming near the machinery, noticed its unsafe or defective condition.

**7. RULE AS TO MASTER'S DUTY IN INSTRUCTING SERVANT.**

The duty of the master to instruct the servant in regard to the dangers of the employment depends on the nature of the work to be performed. If the danger is a latent one, not readily discoverable by the workman, then the master must point out such danger; and if the danger is one the master is supposed to know, and one not readily known to the servant, and about which the master is uncertain whether he does or does not know, then it is the duty of the master to point out the danger. It is not the law that the master does not become liable and is under no obligations to point out danger, unless he knows that the servant does not know of it.

**8. DISTINCTION BETWEEN NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE.**

The distinction between negligence and contributory negligence is, that in negligence the person acts and operates alone, while contributory negligence operates with something else to create it.

HEARD ON ERROR.

The petition filed in this case, so far as material to the decision, is as follows: The plaintiff says that The Avery Stamping Company is, and at all times hereinafter stated was a corporation duly organized under the laws of the state of Ohio for the purpose of carrying on in the city of Cleveland and county of Cuyahoga, Ohio, a general novelty business in iron and steel and the making of frying pans, hoisting buckets, soda water tanks and generally, novelties, especially, things stamped from steel, iron and sheet steel. That for that purpose it had erected before the committing of the wrongs hereinafter complained of, in said city of Cleveland, a factory and plant wherein were located machinery of various kinds, stamping presses, hammers and other appliances and apparatus necessary for its business, all of which was propelled by steam power.

That among the appliances it owned and possessed and operated prior to the committing of the wrongs and grievances hereinafter complained of, was a certain stamping hammer, otherwise known as a drop hammer, the purpose of which was to stamp out frying pans and other things of that nature.

The power was communicated to this stamping or drop hammer by a bolt from the main shaft, connected with the engine, to a shaft that was connected with the stamping or drop hammer. That the distance from the main shaft to the drop hammer shaft was about fourteen feet; that the main shaft was about fourteen feet from the floor, while the shaft of the drop or stamp hammer was only about eight feet from the floor. That the pulley on the drop hammer shaft was about thirty-eight inches in diameter and the corresponding pulley on the main shaft, that is, the pulley that communicated by means of a belt, motion to the shaft of the drop hammer, was about eighteen inches in diameter; that motion was communicated to the drop or stamp hammer shaft by means of a belt running from the pulley to the main shaft to the pulley on the drop hammer shaft; that this belt was about twelve inches wide and consisted of two pieces of leather glued or pasted together, one upon the top of the other, so as to render it strong and durable, and that the belt was laced together in the usual and ordinary way.

And the plaintiff says that the defendant negligently permitted said belt to become worn and unfit for use by continued and long use. That the two pieces of leather belting separated from each other at certain points and places on the belt, and where said separations occurred, the belt was held to either by what are known as belt fastenings or belt hooks; that these fastenings or hooks consisted of pieces of metal having three prongs; that these pieces of metal were driven through the two pieces of leather of which the belt was composed, and clinched after being driven through; that from long and rapid use, the pieces of leather of which the belt was composed had separated during nearly its entire length and was fastened as above stated by said belt hooks or belt fasteners. That these belt hooks or fasteners, before they were clinched, that is, the prongs thereof, were about an inch long.

And the plaintiff says that when said drop or trip hammer was not in use, the usual custom of the defendant was to throw the belt from both the main shaft and the drop or trip hammer shaft and then tie the belt to the ceiling above the main shaft, and that when so tied up, the belt would then be raised from the main shaft and the trip hammer or drop hammer shaft being stationary the belt did not revolve but was stationary.

The plaintiff further says that some time prior to June 12, 1897, perhaps three months prior to that date, the drop or stamp hammer was stopped and not used thereafter until some time after June 12, 1897. That the person or persons who last used the drop or stamp hammer failed to tie up the belt as it should have been tied, so as to remove it from the action and motion of the main shaft and that in consequence thereof the belt fell upon the main shaft and was caused by the main shaft to revolve; that is, the revolving of the main shaft caused the belt to be carried along and over said main shaft which was about eight inches in diameter.

That after the belt had been removed from the pulleys and rested upon the main shaft and the shaft of the drop or stamp hammer, a portion of it reached the floor; that is, it sagged in the center until it reached the floor, and being thus continually carried along by the revolution of the main shaft, it dragged continuously along the floor for about the period of three months. That the defendant well knew, and by the exercise of due care and diligence ought to have known that said belt had not been tied up and that it was dragging upon the floor and constantly revolving on the main shaft, as above stated. That defendant, its agents and its servants were constantly in said building and had every opportunity of knowing that said belt had not been tied up and that it was revolving on said main shaft and being dragged along the floor continuously.

The plaintiff further says that the dragging of said belt along the floor, as aforesaid, caused the belt to be worn almost through and so worn that the aforementioned belt hooks and belt fasteners became loose on the side of the belt that was dragging on the floor, so that the prongs were separated from the leather and were veritably hooks that would catch in clothing or anything else.

And for cause of action the plaintiff says that he was employed by the defendant as a common laborer; that his business was to do such work as he was directed to do, especially, to help blacksmiths and machinists, and work of such a character; that he had no charge, whatever, over the machinery or any part thereof. That he had no knowledge that said belt was for three months dragging upon the floor, as

Toomey v. Stamping Co.

aforesaid. That he had no knowledge, whatever, that the belt hooks or fasteners which had been driven into said belt had become loosened from one side of the leather and were in a position where they would catch into clothing or anything else that would come in contact with it. That his business was of such a character as to call him to such portions of the premises as brought him outside of the sphere or observation of said belt; that he knew nothing of the condition of said belt and had no means of knowing anything about the condition of sai i belt.

That on June 12, 1897, he was directed by the foreman of the defendant, whose orders he was bound to obey, to aid and assist one Peter Sullivan, who was about to run and operate said drop or stamp hammer; that when he was placed under the charge and control of the said Peter Sullivan, he was bound by the defendant and directed by the defendant and the defendant's foreman to obey all the orders and commands of the said Peter Sullivan and that he was in a position of subordination to the said Peter Sullivan and that the said Peter Sullivan while he was working with him, had authority to direct him and direct his movements and was to all intents and purposes his superior while he was so working with him. That the said Peter Sullivan directed this plaintiff to. get a step-ladder and place the same beneath the main shaft which was about fourteen feet from the floor, while the said Peter Sullivan procured another step ladder which he placed beneath the shaft of the drop or stamp hammer, that the purpose of so doing was to throw the aforesaid belt onto the pulleys of the main shaft and the shaft of the drop or stamp hammer.

And the plaintiff says that the belt had been thrown upon the wrong side of the pulley of the main shaft; that after he had mounted said step-ladder he was directed by the said Peter Sullivan to throw said belt over said pulley and onto the other side thereof. That in pursuance of said orders he took hold of said belt for the purpose of throwing it over said pulley; that at the time he took hold of said belt the same was revolving on the main shaft, and that as he took hold of it, some of said hooks that had become worn from the leather and had projected so that their points were sharp, caught into the cloth of his shirt-sleeves and also into the flesh of his arm and pulled him over the shaft; that his clothing became entangled in said hooks, and that by reason thereof, he, himself, became entangled in the belt as it was revolving around the main shaft, and that by reason thereof, he was whirled around the main shaft with great force and velocity    That said main shaft was about two feet below certain girders which were immediately above said main shaft. That as his body revolved around said shaft and was carried around by reason of said belt, his feet struck said girder with great force and momentum; that his arm became entangled between the shaft and the belt, and that as he revolved around said shaft his left arm became broken in two places and that his left leg by being constantly thrown against said girder, became also broken. That he continued to revolve around said shaft, as aforesaid, for a period of about one minute.

And the plaintiff says that the defendant carelessly and negligently provided no engineer to run its machinery and had no engineer running its machinery upon said occassion, and had no person operating or running said machinery, who could stop the same and prevent these injuries to the plaintiff. And that as a matter of fact, the machinery was stopped by the said Peter Sullivan. And the plaintiff says that of this fact, that is, that the defendant had no engineer or suitable pereon to manage, operate and run said machinery, he was wholly ignorant and had no knowledge.

And the plaintiff says that said injuries so as afaresaid sustained by him, were caused wholly and solely by the carelessness and negligence of the defendant, its agents and servants, and without any carelessness or negligence upon his part. And he says that the defendant, in causing said injuries, was guilty of gross negligence and carelessness in the following particulars, to-wit:

First: That they provided no engineer or suitable person to have charge of ts engine and who could stop the same in case of emergency or necessity, and that by reason of that fact and that to that fact his injuries were largely due and attributable. That if the machinery- had been stopped quickly and suddenly, as it might have been, had the defendant provided a suitable person to have charge of said engine, his injuries, at most, would have been slight or trivial.

Second: The defendant was guilty of carelessness and negligence in permitting said belt to become out of order, worn and unfit for use, and in permitting it to drag along the floor for about three months, as the plaintiff alleges the defendant did, and that the leather upon one side of the belt became worn away and the hooks

became exposed and free from the leather, and became, in fact, grappling hooks which caught into his clothing as above stated and fastened into said shaft.

Third—That the defendant was guilty of carelessness and negligence in not causing said belt to be tied up from the main shaft so that it would not revolve thereon and drag along the floor as it did; and the plaintiff says that of this fact he had no knowledge, but that the defendant had full and ample knowledge, and by the exercise of reasonable care ought to have known of it, as it had continued for a long period of time, to-wit: Three months' time.

Fourth—The defendant was guilty of carelessness and negligence in using hook and prongs in keeping said belt together; that the manner in which it fastened said belt together, in itself, was careless and negligent; in keeping and maintaining an unfit, worn out and dangerous belt, which the plaintiff alleges it did. And the plaintiff alleges that said belt was in all respects unfit for the purpose for which it was put on. That the defendant well knew of that fact, and by the exercise of ordinary care ought to have known of it.

Fifth—That said defendant was guilty of negligence in failing to give said plaintiff any proper instruction as to the manner of doing said work, so as not to be injured, as aforesaid.

Sixth—That said defendant was guilty of negligence in not giving said plaintiff any notice or warning of the dangers to be encountered in performing said service.

Seventh—Said defendant was guilty of negligence in ordering said plaintiff into said dangerous position, well knowing and having the means of knowing that he was inexperienced in doing said work, and that he had no knowledge of the dangers attending the same.

Eighth—That said defendant was, under the circumstances hereinbefore stated, guilty of negligence in ordering said plaintiff to perform said service while said shaft was revolving.

Said plaintiff says that he was wholly unaware of the dangerous condition of said premises and said place where he was ordered to work, as aforesaid, nor did he have equal means of knowledge with said defendant, of their dangerous condition; but that defendant did know and by the exercise of ordinary care it might have known of said dangerous condition of said premises and said place and of all the dangers hereinbefore set forth.

And the plaintiff says that he had no knowledge of the way said belt was kept together, and had no knowledge at the time he took hold of it, that it was filled and lined with grappling hooks that were liable to and that did take hold of his clothing and flesh and fasten him into said belt and cause him to revolve around said shaft.

And the plaintiff further says that by reason of his said injuries it became necessary to amputate his left arm, which was done a short distance below the shoulder; that it also became necessary to amputate his left leg which was done above the ankle. That his whole body was bruised, torn and pounded and lacerated and triturated, and that he was sick, and sore for a period of over four months in a hospital. That after he was removed from the hospital he still continued to be sick and sore, and he suffered great and excrutiating mental pain and bodily tortue, and that he still suffers and will always suffer. That he has been permanently disabled and crippled; that his injuries are permanent, and that he will never be able to follow a calling demanding physical or manual effort.

CALDWELL, J.

This case is before us on a petition in error; and, without stating the facts, we proceed at once to consider the errors alleged and relied upon in the hearing of the case.

The first is, that the petition does not state a cause of action, and, in order to show that the petition is insufficient, the plaintiff in error divides the charges of negligence into three: First. No engineer. Second. Unsafe place. Third. Defective belt. And it is claimed that the charge of negligence as to there being no engineer is insufficient because the plaintiff did not in his petition deny that he had the means of knowledge, although he did deny that he was wholly ignorant and had no knowledge of the fact that there was no engineer.

There is some uncertainty under the decisions of Ohio, as to whether the averment on the part of the plaintiff that he had not the means of knowledge is necessary in a petition of this kind.

The syllabus in Coal & Car Co. v. Norman, 49 Ohio St., 598, does not require that averment in order to make a good petition. That opinion is based largely upon what is said by Wood in his work on Master and Servant.

" It is necessary to aver in a petition in a case of negligence."

And it is not there stated that the averment in question is necessary to make a good petition.

In Coal and Mining Co. v. Adm'r. of Clay, 51 Ohio St., 542, where the court is discussing what it is necessary for the plaintiff to show in order to make out his case, the court does say that it is necessary for him to show that he had not the means of knowing the dangers to which he was exposed.

The defendant below filed no demurrer to the petition, nor did he in any way, by motion or by raising the question in any manner on trial, bring this matter to the attention of the court. The question was not raised on the motion for a new trial, nor is it one of the grounds of error stated in the petition in error. It seems never to have occurred to the plaintiff in error that the petition was in any manner defective until on the hearing of the case in this court, and that question hence was not raised at any time prior thereto. And, although it has been held in this state that if the petition is defective in that it does not state a cause of action, the objection to the petition may be raised at any time and in any court in which the case may be pending, and if the petition is found so clearly defective that no cause of action is stated in it, it might be proper and it is proper for the reviewing court to take that matter into consideration in disposing of the case; but a reviewing court will, under all the circumstances herein narrated, extend to the pleading a liberal construction and will not render any aid in the support of such a claim beyond what it is compelled to do.

The separating of the causes or charges of negligence as is done by the plaintiff in error, does not determine the question of whether a cause of action is stated or not, for, in determining whether the plaintiff was entitled to recover under his petition, all the averments of his petition were to be considered and if upon all the averments he has stated a cause of action, the petition is not defective on the ground here alleged. And, in connection with this, it is urged that the want of an engineer was not the proximate cause of the injury the plaintiff below received.

It is impossible in this case, to so divorce the causes that were active in bringing about the injury complained of.

If an engineer had been standing close by the engine, much of the injury received by the defendant in error most likely would not have occurred ; there is ground for claiming that the delay in stopping the engine, greatly aggravated his injuries and added to what he would otherwise have received.

These different charges of negligence all enter into to make up the cause of action, and because there may be no averment that the defendant in error had no means of knowing that there was no engineer, would not in and of itself prohibit a recovery under the petition, even if that allegation is necessary.

It is claimed that the petition is defective also in that the plaintiff does not aver that he did not have the means of knowing of the unsafe condition of the place where he was called upon to work; that his averment is, that he did not have equal means of knowledge with the defendant.

It is claimed that the petition is defective wherein it alleges the defect that is claimed to exist in the belt, for the reason that the measurements set out in the petition are incompatible with the belt's dragging and wearing itself out in the manner averred. This defect claimed to exist in the petition, is clearly not well taken; and, as to the petition as a whole, none of the matters set forth by counsel for the defendant in error having been heretofore noticed, nor the court's attention at any time called to them, we hold that at this time the averments are such that the petition is sufficient to support the judgment obtained in the court below.

It is claimed that the court erred in the admission of testimony. On page 10 of the record the question was asked, "What was the ordinary method in use there of fastening these layers together when they were separated, before this accident?" The court, before allowing the witness to answer the question, ascertained how long the witness had been at work in the factory prior to the time of the injury; and in answering that question the witness answered, "I worked there about seven years. Why they used to have these and pegs and glue and different kinds of ways of fastening these together." And then the question was asked, "Whether they had these hooks also?" And to this, there was an objection, a ruling and an exception, and the answer was, "Yes, sir." We find no error in the rulings of the court in those questions and answers.

On page 76 of the record, it is claimed that the court erred in allowing the case to proceed after it was admitted by the attorney for the plaintiff below, that he would not claim, in presenting the testimony, that the belt was over the main shaft and also over the shaft of the hammer, but was free from the hammer shaft and only on the main shaft, and in that position was dragging upon the floor. And, thereupon, the attorney for the plaintiff in error, asked that all the testimony to the effect that this belt had been dragging upon the floor, be withdrawn from the jury. The court refused to take that testimony from the jury and there was an exception noted, and the question was raised at other points in the hearing of the case.

We think that the fact that the belt was upon the hammer shaft, being alleged in the petition, was merely a description of the surroundings, and was not the statement of a fact that was in any way intended to bring negligence to the defendant below, nor was it a fact upon which any liability was to be fastened upon the company in any manner in the trial of the case. This being true, it was merely descriptive of the situation of things, and entirely immaterial in the case. The only question was, "Did the belt drag upon the floor regardless of how it might be situated?" And the company came into court to show that it did not drag, and the company was not claiming that the belt was so fixed that it could not drag, except as it claimed that the belt was tied up to some part of the building above the main shaft.

We think there was no error in the admission of that testimony.

Toomey v. Stamping Co.

Again, on page 99 and page 100 of the record, this question was asked: "You may state what would be likely to happen, if anything, if the shaft was still revolving at 165 times a minute while you were throwing the belt over?" The answer was: "It would be kind of dangerous to say the least; a man would likely be caught in the belt or in the pulley."

It was asked to have this answer taken from the jury. The court took from it the first part, " It would be dangerous," and the court held that the remainder of the answer might stand. This witness was called, or, at least, was examined as an expert to some extent, and as an expert he undertook to tell how the belt should be thrown over the pulley, and he had so described by permission of the court; he had described how the act should be performed, and then this question was asked him which amounts to nothing more under the circumstances of the case and the examination as it took place, than for the witness to point out what dangers there would be. And the witness, and other witnesses in the case, undertook to show, and did testify, that there would be danger of becoming involved in the belt or being involved in the pully. This witness testified that the danger in performing the act was that the party, if he was not experienced in the matter, was in danger of being caught in the belt or the pulley. And we see nothing wrong with the ruling on that question.

It is claimed in this case that the proof did not warrant the verdict.

In the first place, it is claimed that Toomey was a fellow servant with Sullivan, with whom he was working at the time that he received his injuries.

It is claimed that the law is, that the relation of an artisan or a machinist and his helper, is, that they are fellow servants and one is not the superior and the other the inferior. A large number of cases were cited to show that this is the rule. And it is claimed that the evidence shows that Toomey was the assistant of Sullivan who was the artisan or machinist, and that Sullivan had no authority over Toomey except to ask him to do anything necessary to assist Sullivan in what he was doing.

First as to the law. It is clearly the law of this state that one servant may be the superior of another servant when they are both engaged in a common work of the master. The law of Ohio upon this proposition is somewhat different from that of any other state. That difference sometimes occurs only in the application of the rule; but, in most states, however, the rule adopted by our state is not endorsed at all. The rule in Ohio was first laid down in 20th Ohio Reports by a divided court. The question came before the Supreme Court again in Cleveland Col. & Cin. Rd. Co. v. Keary, 3 Ohio St., 202, and the members of the court there agreed upon this rule: That the master is liable for the injury of one servant through the carelessness of another when both are engaged in a common service and one is given control over the other; and in that case, Little Miami R. R. Co. v. Stevens, 20 Ohio. 416 the case was affirmed. That doctrine has been many times affirmed in the state of Ohio until it has become a well settled rule of law: In Mad River, L. E. Rd. Co. v. Barber, 5 Ohio St., 541; Whaalan v. M. P. & L. E. R. R. Co., 8 Ohio St., 250; Kumler v. Junc. R. R. Co., 33 Ohio St., 150; P. Ft. W. & C. R. R. Co. v. Lewis, 33 Ohio St., 196; L. S. & M. S. Ry. Co. v. Knittal, 33 Ohio St., 468; Railway Co. v. Ranney, 37 Ohio

St., 665; Dick v. Railroad Co., 38 Ohio St., 389; L. S & M. S. Ry. Co. v. Lavalley, 36 Ohio St., 221; Railway Co. v. Spangler, 44 Ohio St., 471.

In Berea Stone Co. v. Kraft, the 31st Ohio St., 287, the Supreme Court held that it made no difference if the superior servant who was given control over his associate servant, was engaged at the time of his negligence in the work that should have been performed by the inferior servant. The application of this rule is not always easy; and we find in some of the cases referred to, and in others decided by the Supreme Court, that there has been a difference in the members of the court in deciding whether the rule applies to persons situated under particular and peculiar circumstances, such as that of the engineer of a train and the brakeman. But the only question to be determined, is whether one servant is given by the master authority or power to control and direct the work and labor of another servant.

Often servants labor together in a common work, and they direct each other what to do, or one who is more experienced than the other, may direct how the work shall be done; but that does not determine the question whether the master is liable for the negligence of either by which the other is injured; but the liability of the master is determined entirely by a solution of the question whether or not the master has placed one under the direction of the other, or whether he has given one control over another servant in performing a certain work; if he has, and the inferior is injured by the carelessness of the superior, then the liability exists. Some states modify this rule by extending it only to where the master has given authority expressly to one servant to control the acts and duties of another, but our state extends it to a case where the master has put one under another, or where, by his direction, he has put one over another. So that it makes no difference in this case whether by the direct act of the master or the foreman, Sullivan was given charge over Toomey, or whether that act consisted in placing Toomey under the charge of Sullivan. The mere working together, where the advice of one is accepted by another and where, by superior knowledge, one gives all the advice and direction for the work, is not alone sufficient to charge the master with the negligence of either by which the other is injured, but such direction and authority must be by the authority given by the master, or some one standing in his place. This law, being well settled in Ohio, it only becomes necessary to determine what the evidence shows in this case. Without undertaking to repeat the whole of it, Toomey testifies that Einan, the foreman of the shop, came to him and told him to go and help Sullivan and to do as he told him. Einan does not deny this conversation, nor is his attention called to it by the counsel for plaintiff in error.

The superintendent of the shops testifies that where one is placed under another to assist him about a certain work, if he does not obey the orders of the one whom he is assisting, he would be discharged. He might as well say that disobedience of a servant under an artisan in that shop was disobedience to the orders of the company, for certainly no company would discharge one servant for disobeying the orders of another servant unless the one, giving orders, had authority to command obedience. This is substantially all the testimony upon this question, that we find in the bill of exceptions.

It was claimed by the plaintiff in error, that Sullivan had no further authority to command obedience to his orders on the part of Toomey

than one servant has over another where they are working together without any pretence of authority from the principal. Much evidence was introduced tending to show that that was the relation between Sullivan and Toomey. This being true, it was proper for the court to leave the question of whether Sulivan was in authority over Toomey or not, and whether he had authority to command obedience from Toomey, to the jury. And we feel that we are not authorized in this case to disturb the finding of the jury that Toomey was subordinate to Sullivan.

It is contended, in the next place, that the defective condition of the belt as to the belt hooks,—that there was no evidence that the defendant, either through Sullivan or any one else, had actual knowledge of their defective condition. There is evidence tending to show that the plaintiff in error knew that there were hooks in the belt, or, at least, some of its employes knew,—and employes who sustained that relation to the plaintiff—and that their knowledge would be knowledge to the plaintiff.

There is testimony to show that the belt was dragging for some considerable time upon the ground. There is considerable evidence that the belt was badly worn, so that there were strings hanging from it.

The jury were not confined to finding that the plaintiff in error knew all these things, but that the plaintiff in error had means of knowing, if it did not know, and was careless in not knowing, if it did not know. And if the jury found either knowledge or means of knowledge, and negligence in not putting the belt in proper condition or in not ascertaining its actual condition, it would support the verdict in this case. And we think the evidence clearly shows that the plaintiff in error either knew the condition of the belt, or was careless in not knowing its condition, and, in either event, the proof would support the verdict.

There is a dispute in the testimony as to which way the pulley on the main shaft revolved, whether towards the east or towards the west. If the jury should find either way, the court would not disturb such finding.

It is claimed that the evidence does not show sufficiently clear to support the verdict, just how the accident happened.

There is evidence uncontradicted tending to show that the hooks in the belt caught first the clothing of Toomey, and afterwards caught into the flesh of his arm and lacerated the flesh, and that it was this that threw him on to the pulley and shaft and caused him to become entangled in the belt, and that he thus received his injuries.

There is a great deal of theorizing on the part of the plaintiff in error as to how the accident occurred and what caused it, but such theories are found entirely without facts to support them, and the only facts that would warrant the jury in coming to any conclusion as to how the injuries were received, was, that they were received by reason of the condition of the belt, and more directly by reason of the hooks.

The evidence, we think, warranted the jury in finding that hooks had been placed in the belt, and that they had become so worn that they were in the condition, at the time of the injury, to inflict the injuries complained of in the case, and that this condition in the belt was brought to the jury by the fact that the belt had been long used, had been fastened together by hooks, and was allowed to drag on the ground, and no particular attention seemed to be paid to the belt as to its condition, by

the company or any one in its employ authorized to perform such work.

It is claimed that the evidence shows that Toomey had the means of knowing the condition of the belt as fully as had the company, and that he was bound to know its condition, as it had been prior to that time within his observation. It is shown that Toomey had been working, prior to his injuries, in the vicinity of this belt; that while he was thus working, the belt was revolving upon the main shaft, with what rapidity the evidence does not show. It is easy now to look back and see that he might, if he had taken the time from his usual duties have seen the exact condition of the belt, but that is never a fair way to determine whether a party has acted prudently or not. In fact, if we take the evidence of all the other persons employed in and about the shop, even the superintendent and foreman of the shop, as to the condition of this belt, we will see that Toomey exercised the same care that they did; that is the standard of care; that a man shall exercise such care as others do when they are similarly situated. Many of these persons were called as witnesses, and they all testified, either that they worked in the neighborhood of this belt, or that they passed by it frequently ; and, in fact, they nearly all saw it every day for some days and months prior to the accident complained of in this case, and yet not one of them paid such close attention to its condition that he was able to state whether there were hooks in it or not, and what its condition was.

Two or three testified to seeing strings hanging from it, but, beyond this, no one is able to describe anything like the minutiæ that is now required of Toomey, in the condition of the belt—and that is no doubt the truth ; for persons engaged about their own work, and having their mind and attention fixed upon that work, and seeing the belt only casually, either by passing or by glance sight of it, would be entirely unable, no doubt, to describe all the minutiæ that is required in the testimony in this case. And we do not believe that the jury would have been justified in this case in finding that Toomey was negligent in not knowing the condition of the belt.

Again, it is claimed that the evidence shows that Toomey was guilty of contributory negligence, and it is claimed that he was guilty of contributory negligence in the manner in which he undertook to place this belt on the opposite side of the pulley.

There is very little, if any, testimony in the case showing what would be the proper way to perform that act.

It occurs to the court, and, we think, will readily occur to any one, that to undertake to lift the belt weighing seventy-five pounds over a pulley some sixteen or eighteen inches in diameter, by reaching out several inches to take hold of the belt and lift it over, would be a dangerous operation, and, unless performed with skill and care and knowledge, would be very likely to injure the person who was performing the act.

The evidence does not show that Toomey had any special knowledge of the work, and, in fact, he himself says that he knew nothing about it ; that he simply obeyed the orders of Sullivan in all that he did.

So far as the court can learn from the testimony in the case, Toomey undertook to handle the belt in the various steps that he was to perform in that act, in the way that an expert would have done it ; he placed his ladder against the shaft, and one side of it on each side of the rod that was above the shaft; he placed it some little distance from the pulley, so

Toomey v. Stamping Co.

that his ladder would not come in contact with it. He reached over the pulley and undertook to lift the belt to the other side of the pulley.

We do not see any reason why this was not as safe as any other way that a person could use in performing that work. If he put his ladder on the same side with the belt, there would be great danger of throwing the belt or letting the belt strike on the pulley before it went over, and he would have nothing to take hold of to support himself and hold himself securely while lifting the belt ; whereas, where he placed his ladder, he had an iron rod that he could take hold of to steady himself while performing the work. No doubt, from all that we see in the testimony, this belt, while being lifted, in some way struck the pulley which caused it to jump high enough so that the hooks in the belt seized upon his clothing. One person, performing that work and doing it as he would have to with one hand, would be almost sure to let the belt touch the pulley, and the very thing that happened would almost likely occur. It would probably be quite impossible for any one to lift the belt over, situated as Toomey was, without its coming in contact with the pulley, and such contact might produce the jumping of the belt.

The negligence of Einan was in ordering an inexperienced man to perform a duty that was dangerous for one man alone to perform, and which should have been performed by Sullivan and Toomey both.

We think the evidence supports the verdict.

It is claimed that there was a variance in that the testimony showed that the belt was not over the hammershaft during the time that it was claimed it was dragging, but was over the main shaft alone ; and it is claimed that that variance is such that the plaintiff in error can even now avail himself of it, and that it is such that this case should be reversed. I have said all on that subject that is necessary to say.

We find that the court did not err in refusing to grant a new trial because of newly-discovered evidence.

It is claimed that the court erred in charging the jury.

First, that the court erred in defining negligence on the part of the plaintiff as a ground for defense. He first said : "You will observe also that the answer alleges that the plaintiff was himself negligent or, to use a common form of speech, was guilty himself of contributory negligence." Then the court says, "That makes it necessary to define contributory negligence." Then the court gives the definition.

Our attention has heretofore been called to this identicle definition given by the judge below, and we have said all that it is necessary for us to say in regard to that matter.

The negligence of the plaintiff below was either negligence, or contributory negligence. The court has clearly defined these terms, and the court said to the jury that the plaintiff could not recover if he was guilty of negligence, and he clearly said to the jury that the plaintiff could not recover if he was guilty of contributory negligence.

The only distinction that can be drawn between negligence and contributory negligence, is, that one may act and operate alone, independent of negligence of any other person, while contributory negligence, as the very term means, is that which operated with something else to create. And the definition, as given by the court, is one that is approved by a great many authorities, and the one that is frequently given in the decisions found in the books.

As we have heretofore discussed this subject to some extent, we will say nothing more about it at this time. But we do not believe that there was any error in the definition of the court, nor was the jury mislead in any manner by it.

It is complained that the court erred in charging the jury " that if there were dangers incident to the work at which the plaintiff was engaged, known to the defendant, or which ought to have been known to him by the exercise of ordinary care, but unknown to the plaintiff and not discoverable by him by the exercise of ordinary care, under such circumstances it became and was the duty of defendant to call plaintiff's attention to such dangers."

It is claimed that this is defective in that the plaintiff in error would not be liable unless it was ignorant of defendant in error's ignorance. It is claimed, in other words, that the defendant below was or ought to have been itself aware that the plaintiff was in need of such instruction. That depends entirely upon the nature of the work that is to be performed. If the danger is a latent one, that is, not readily discoverable by the workmen, then the master must point out such dangers; and if the danger is one that the master is supposed to know, but which is not readily known to the servant, and which the servant may not know and about which the master is uncertain as to whether he will know or not, under such circumstances the authorities hold that it is the duty of the master to point out the danger; and it is not the law that the master does not become liable and is under no obligations to point out dangers until he knows that the servant does not know of it. And the charge as given by the court when it comes to applying the evidence to the law as laid down by the court, is correctly stated.

This was a case where the master knew or ought to have known the dangers attending the moving of that belt; and yet the great danger, the very danger that injured the party, was one that might not be known and not likely to be known by one not experienced in the business— that of allowing the belt to touch the pulley and cause it to kick and strike him.

What is said in regard to this matter, applies equally well to the next objection taken to the charge of the court, as stated in the brief of counsel for plaintiff in error.

We find no error in the charge of the court as given to the jury.

It is claimed that the court erred in refusing to give requests asked.

Request eight assumes, in starting off, that this was a manufacturing in which Sullivan was an artisan and Toomey was his helper; and then the court is asked to say, that the relation of superior and subordinate does not arise from that relation, especially if the artisan is merely to indicate by words or signals when the assistance or co-operation of such helper is required; and asked the court to state that if that was their relation to each other, then the artisan and helper were fellow servants in a common employment, and that the company would not be liable for the injury of either resulting from the negligence of the other.

The court was warranted in rejecting this request, principally because it is not based at all upon the rule in this state. The rule in this state is not determined—a case under it is not determined by whether the persons were artisan and helper, or what their relations were, rather than that one was put in control over the other. And this request nowhere calls for that rule, nor for the case to be determined

Toomey v. Stamping Co.

under it; but it states other relations of the artisan or of these persons, such as artisan and assistant, and then assumes certain facts as to how they did act towards each other, and, upon that, asked the court to state that the company would not be liable if either was injured by the negligence of the other. That is not the basis on which the liability of the master is determined in this state.

Complaint is made because request ten was not given.

The want of an engineer, of course, was not the proximate cause of the party becoming entangled in the belt; but it was proper to leave to the jury whether it was a cause acting with other causes that produced the injuries complained of.

Request twelve is complained of, and we think the charge sufficiently covers the law called for in that request, so far as it should have been given.

Requests fifteen, sixteen and seventeen, were properly refused by the court.

The question was not one of presumption on the part of the jury, but whether Toomey was negligent in not knowing what he might have known, and it was proper to present the matter to the jury in that light, and not in the light asked for in these requests.

The judgment of the court of common pleas is affirmed.

*Foran, McTighe & Baker*, for plaintiff in error.

*Ford, Snyder, Henry, & McGraw*, for plaintiff in error.