Caldwell, J.
This case is before us on a petition in error; and, without stating the facts, we proceed at once to consider the errors alleged and relied upon in the hearing of the case.
The first is, that the petition does not state a cause of action, and, in order to show that the petition is insufficient, the plaintiff in error divides the charges of negli *185 gence into three: First. No engineer. Second. Unsafe place. Third. Defective belt. And it is claimed that the charge of negligence as to there being no engineer is insufficient because the plaintiff did not in his petition deny that ■he had the means jf knowledge, although he did deny that he was wholly ignorant and had no knowledge of the fact that there was no engineer.
There is some uncertainty under the decisions of Ohio, as to whether the averment on the part of the plaintiff that he had not the means of knowledge is necessary in a petition of this kind.
The syllabus in the case of Coal & Car Co. v. Norman, 49 Ohio St., 598, does not require that averment-in order to make a good petition. That opinion is based largely upon what is said by Wood in his work on Master and Servant.
“It is necessary, to aver in a petition in a case of negligence. ”
And it is not there stated that the averment in question ■is necessary to make a good petition.
In the case of Coal and Mining Co. v. Adm’r. of Clay, 51 Ohio St., 542, where the court is discussing what it is necessary for the plaintiff to show in order to make out his ■case, the court does say that it is necessary for him to show that he had not the means of knowing the dangers to which he was exposed.
The defendant below filed no demurrer to the petition, nor did he in any way by motion or by raising the question in any manner on trial bring this matter to the attention of the court. The question was not raised on the motion for a new trial, nor is it one of the grounds of error stated in the petition in error. It seems never to have occurred to the plaintiff in error that the petition was in any manner defective until on the hearing of the case in this court, and that question hence was not raised at any time prior thereto. And although it has been held in this state that if the petition is defective in that it does not state a cause of action, the objection to the petition may be raised at any time and in any court in which the case may be pending, and if the petition is found so clearly defective that no cause of action is stated in it, it might be proper and it is proper for thq reviewing court to take that matter into considera *186 tion in disposing of the case; but a reviewing court will,. under all the circumstances herein narrated, extend to the pleading a liberal construction and will not render any aidt in the support of such a claim beyond what it is compelled to do.
The separating of the causes or charges of negligence as. is done by the plaintiff in error, does not determine Ihe question of whether a cause of action • is stated or not, for, in determining whether the plaintiff was entitled to recover ■ under his petition, all the averments of his petition were to. be considered, and if upon all the averments he has stated a cause of action, the petition is not defective on the ground., here alleged. And, in connection with this, it is urged that the want of an engineer was not the proximate cause-of the injury the plaintiff below received.
It is impossible in this case, to so divorce the causes that.-, were active in bringing about the injury complained of.
If an engineer had been standing close by the engine, much of the injury received by the defendant in error most-likely would not have occurred; there is ground for claiming that the delay in stopping the engine, greatly aggravated his injuries and added to what, he would otherwise.have received.
These different charges of negligence all enter into to - make-up the cause of action, and because there may be no.averment that the defendant in error had no means of knowing that there was no engineer, would not in and of itself-prohibit a recovery under the petition, even if that allegation is necessary.
It is claimed that the petition is defective also in that the plaintiff does not aver that he did not have the means of"knowing of the unsafe condition of the place where he was.called upon to work; that his averment is, that he did not have equal means of knowledge with the defendant,
It is claimed that the petition is defective wherein it alleges the defect that is claimed to exist in the belt, for the reason that the measurements set out in the petition are in- • compatible with the belt’s dragging and wearing itself out in the manner averred. This defect claimed to exist in the petition, is clearly not well taken; and, as to the petition as- - a whole, none of the matters set forth by counsel for the - *187 defendant in error having been heretofore noticed, nor the •court’s attention at any time called to them, we hold that at this time the averments are such that the petition is sufficient to support the judgment obtained in the court below.
It is claimed that the court erred in the admission of testimony. On page 10 of the record, the question was asked, “What was the ordinary method in use there of fastening these layers together when they were separated, before this accident?” The court, before allowing the witness to answer the question, ascertained how long the witness had been at work in the factory prior to the time of the injury; and, in answering that question, the witness answered, “I worked there about seven years, Why, they used to have these and pegs and glue and different kinds of ways of fastening these together.” And then the question was asked, “Whether they had these hooks also?” And to this, there was an objection, a ruling and an exception, and the answer was, “Yes, sir.” We find no error in the rulings of the court in those questions and answers.
On page 76 of the record, it is claimed that the court •erred in allowing the case to proceed after it was admitted ■by the attorney for the plaintiff below, that he would not •claim, in presenting the testimony, that the belt was over the main shaft and also over the shaft of the hammer, but was free from the hammer shaft and only on the main shaft, and in that position was dragging upon the floor, * And, ■thereupon, the attorney for the plaintiff in error, asked that all the testimony to the effect that this belt had been dragging upon the floor, be withdrawn from the jury, The court refused to take that testimony from the jury, and there was an exception noted, and the question was raised at other points in the hearing of the case.
We think that the fact that the belt was upon the hammer shaft, being alleged in the petition, was merely a description of the surroundings, and was not the statement of a fact that was in any way intended to bring negligence to the defendant below, nor was it a fact upon which any liability was to be fastened upon the company in any manner in the trial of the case. This being true, it was merely descriptive of the situation of things, and entirely immaterial in the case. The only question was, “Did the belt drag up *188 on the floor regardless of how it might be situated?” JAnd? the company came into court to show that it did not drag, and the company was not claiming that the belt was so fixed that it could not drag, except as it claimed that the belt was tied up to some part of the building above the main-shaft.
We think there was no error in the admission of that testimony.
Again, on page 99 and page 100 of the record, this-question was asked: ‘‘You may state what would be likely to happen, if anything, if the shaft was still revolving at 165 times a minute while you were throwing the belt over ?’' The answer was: ‘‘It would be kind of dangerous, to say the least; a man would likely be caught in the belt or in-the pulley. ”
It was asked to have this answer taken from the.jury. The court took from it the first part, “It would - be dangerous,” and the court held that the remainder of the answer' might stand. This witness was called, or, at least, was examined as an expert to some extent, and as an expert he undertook to tell how the belt should be thrown over the-pulley, and he bad so described by permission of the court;, he had described how the act should be performed, and then this question was asked him which amounts to nothing more under the circumstances of the case and the examination as it took place, than for the witness to point, out what dangers there would be. And the witness, and •other witnesses in the case, undertook to show, and did' testify, that there would be danger of becoming involved in the belt or being involved in the pulley, This witness testified that 'the danger in performing the act was that the party, if he was not experienced in the matter, was in danger of being caught in the belt or the pulley. And we see .nothing wrong with the ruling on that question.
It is claimed in this case that the proof did not warrant the verdict.
In the first place, it is claimed that Toomey was a'fellow servant with ¡Sullivan, with whom he was working at the time that he received his injuries1
It is claimed that the law is, that the relation of an artisan or a machinist and his helper, is, that they are fellow *189 servants and one is not the superior and the other the inferior, A large number of cases were cited to show that, this is the rule. And it is claimed that the evidence shows that Toomey was the assistant of Sullivan who was the artisan or machinist, and that Sullivan had no authority over Toomey except to ask him to do anything necessary to assist Sullivan in what he was doing,
First as to the law. It is clearly the law of this state that one servant may be the superior of another servant when they are both engaged in a common work of the master. The law of Ohio upon this proposition is somewhat different from that of any other state, That difference sometimes occurs only in the application of the rule; but, in most states, however, the rule adopted by our state is not endorsed at all. The rule in Ohio was first laid down in 20th Ohio Reports by a divided court. The question came before the supreme court again in the 3rd Ohio St., page 202, and the members of the court there agreed upon this rule: That the master is liable for the injury of one servant through the carelessness of another when both are engaged in a common service and one is given control over the other; and in that case, Stevens v. The Little Miami R. R. Co., 20 Ohio St., 415. the case was affirmed. That doctrine has been many times affirmed in the state of Ohio until it has become a well settled rule of law: In 5 Ohio St., 541; 8 Ohio St., 249; 33 Ohio St., 150; 33 Ohio St., 196; 33 Ohio St., 468; 37 Ohio St., 665; 38 Ohio St., 389; 36 Ohio St., 221; 44 Ohio St., 471.
In., the 31st Ohio St., 287, the supreme court held that it made no difference if the superior servant who was given control over his associate servant, was engaged at the time of his negligence in the work that should have been performed by the inferior servant. The application of this rule is not always easy; and we find in some of the cases referred to, and in others decided by the supreme court, that there has been a difference in the members of the court in deciding whether the rule applies to persons situated under particular and peculiar circumstances, such as that of the engineer of a train and the brakeman. But the only question to be determined is, whether one servant is given by the master authority or power to control and direct the work and labor of another servant.
*190 Often servants labor together in a common work, and they direct each other what to do, or one who is more experienced than the other, may direct how the work shall be ■done; but that does not determine the question whether the master is liable for the negligence of either by which the other is injured; but the liability of the master is determined entirely by a solution of the question whether or not the master has placed one pnder the direction of the other, or whether he has given one control over another servant in performing a certain work; if he has, and the inferior is injured by the carelessness of the superior, then the liability exists. Some states modify this rule by extending it only to where the master has given authority expressly to one servant to control the acts and duties of another, but our state extends it to a case where the master has put one under another, or where, by his direction, he has put one over another. So that it makes no difference in this case whether by the direct act of the master or the foreman, Sullivan was given charge over Toomey, or whether that act consisted in placing Toomey under the charge of Sullivan. The mere working together, where the advice of one is accepted by another and where, by superior knowledge, one gives all the advice and direction for the work, is not alone sufficient to charge the master with the negligence of either by which the olher is injured,'but such direction and authority must be by the authority given by the master, or some one standing in bis place. This law, being well settled in Ohio, it only becomes necessary to determine what the evidence shows in this case. Without undertaking to repeat the whole of it, Toomey testifies that Einan, the foreman of the shop, came to him and told him to go and help Sullivan and to do as he told him. Einan does not deny this conversation, nor is his attention called to it by the counsel for plaintiff in error,
The superintendent of the shops testifies that where one is placed under another to assist him about a certain work, if he does .not obey the orders’of the one whom he is assisting, he would be discharged. He might as well say that disobedience of a servant under an artisan in that shop was disobedience to the orders of the company, for certainly no company would discharge one servant for disobeying the *191 ■orders of another servant, unless the one, giving orders, had authority to command obedience. This is substantially all the testimony upon this question, that we find in the bill of exceptions.
It was claimed by the plaintiff in error, that Sullivan had' no further authority to command obedience to his orders on -the part of Toomey than one servant has over another where they are working together without any pretence of authority from the principal. Much evidence was introduced tending to show that that was the relation between Sullivan and Toomey. This being true, it was proper for the court to leave the question of whether Sullivan was in authority over Toomey or not, and whether he had authority to command obedience from Toomey, to the jury. And we feel that we are not authorized in this case to disturb the finding of the jury that Toomey was subordinate to Sullivan.
It is contended, in the next place, that the defective condition of the belt as to the belt hooks, — that there was no •evidence that the defendant, either through Sullivan or any one else, had actual knowledge of .their defective condition. There is evidence tending to show that the plaintiff in error knew that there were hooks’ in the belt, or, at least, some of its employes knew, — and employes who sustained that relation to the plaintiff — and that their knowledge, would be ■ knowledge to the plaintiff.
There is testimony to show that the belt was dragging for some considerable time upon the ground There is considerable evidence.that the belt was badly worn, so that there were strings hanging from it.
The jury were not confined to finding that the plaintiff in error knew all these things, but that the plaintiff in error had means of knowing, if it did not know, and was careless in not knowing, if it did not know. And if the jury found either knowledge or means of knowledge, and negligence in not putting the belt in proper condition or in not ascertaining its actual condition, it would support the verdict in this case. _ And we think the evidence .clearly shows that the plaintiff in error either knew the condition of the belt, or was careless in not knowing its condition, and, in either event, the proof would support the verdict.
There is a dispute in the testimony as to which way the *192 pulley on the main shaft revolved, whether towards the-east or towards the west. If the jury should find either way, the court would not disturb such finding,
It is claimed that the evidence does not show sufficiently, clear to support the verdict, just how the accident happened.
There is evidence uncontradicted tending to show that the-hooks in the belt caught first the clothing of Toomey, andafterwards caught into the flesh of his arm and lacerated-the flesh, and that it was this that threw him on to the pulley and shaft and caused him to become entangled in the-belt, and that he thus received his injuries.
There is a great deal of theorizing on the part of the plaintiff in error as to how the accident Occurred and what caused it, but such theories are found entirely without facts to support them, and the only facts that would warrant the jury in coming to any conclusion as to how the injuries-were received, was, that they were received by reason of the condition of the belt,and more directly by reason of the-hooks,
The evidence, we think, warranted the jury in finding that hooks had been placed in the belt, and that they had-become so worn that'they were in the condition, at the time of the injury, to inflict the injuries complained of in the case, and that this condition in the belt was brought to-the jury by the fact that the belt had been long used, bad been fastened together by hooks,and was allowed to drag on. the ground, and no particular attention seemed to be paid to the belt as to its condition, by the company or any one in its employ authorized to perform such work,
It is claimed that the evidence shows that Toomey had-the means ofknowing the condition of the belt as fully as-had the company,and that he was bound to know its condition, as it had been prior to that time within his observation. . It is shown that Toomey had been working, prior to his injuries, in the vicinity of- this belt; that while he was thus working, the belt was revolving upon the main shaft,, with what rapidity the evidence does not show. It is-easy now to look back and see that he might, if he had taken the time from his usual duties, have seen the exact condition of the belt, but that is never a fair way to deter. *193 mine whether a party has acted prudently or not. In fact, if we take the evidence of all the other persons employed in and about the shop, even the superintendent and foreman of the shop, as to the condition of this belt, we will see that Toomey exercised the'same care that they did; that is the standard of care: that a man shall exercise such care as others do when they are similarly situated. Many of these persons were called as witnesses, and they ail testified, either that they worked in the neighborhood of this belt, or that they passed by it frequently; and, in fact, they nearly all saw it every day for some days and months prior to the accident complained of in this case, and yet not one of them paid such close attention to its condition, that he was able to state whether there were hooks in.it or not, and what its condition was.
Two or three testified to seeing strings hanging from it, but, beyond this, no one is able to describe anything like the minutiae that is now required of Toomey, in the condition of the belt' — 'and that is no doubt the truth; for persons engaged about their own work and, having their mind and attention fixed upon that work, and seeing the belt only casually, either by passing or by glance-sight of it, would be entirely unable, no doubt, to describe all the minutiae that is required in the testimony in this case. And we do not believe that the jury would have been justified in this case in finding that Toomey was negligent in not knowing the condition of the belt.
Again, it is claimed that the evidence shows that Toomey was guilty of contributory negligence, and. it is claimed that he was guilty of contributory negligence in the manner in which he undertook to place this belt on the opposite side of the pulley.
There is very little, if any, testimony in the case, showing what would be the proper way to perform that act.
It occurs to the court,and, we think, will readily occur to anyone, that to undertake to lift the belt weighing seventy-five pounds, over a pulley some sixteen or eighteen inches in diameter, by reaching out several inches to take hold of the belt and lift it over, would be a dangerous operation, and, unless performed with skill and care and knowledge, would be very likely to injure the person who was performing the act.
*194 The evidence does not show that Toomey had any special knowledge of the work, and, in fact, he himself says that he knew nothing about it; that he simply obeyed the orders ■of Sullivan in all that he did,
So far as the court can learn from the testimony in the case, Toomey undertook to handle the belt in the various steps that he was to perform in that act, in the way that an expert would have done it; he placed his ladder against the shaft, and one side of it on each side of the rod that was above the shaft; he placed it some little distance from the pulley,so that his ladder would not come in contact with it. He reached' over the pulley and undertook to lift the belt to the other side of the pulley.
We do not see any reason why this was not as safe as any other way that a person could use in performing that work. If he put his ladder on the same side with the belt, ' there would be great danger of throwing the belt or letting the belt strike on the pulley before it went over, and he would have nothing to take hold of to support himself and ■hold himself securely while lifting the belt; whereas, where he placed his ladder, he had an iron rod that be could take hold of to steady himself while performing the work. No doubt, from all that we see in the testimony, this belt, while b9ing lifted, in some way struck the pulley which caused it to jump high enough so that the hocks in the belt seized upon his clothing. One pc-rson, performing that work and doing it as he would have to with one hand, would be almost sure to let the belt touch the nuliey, and the very tiring that happened would almost likely occur. It would probably be quite impossible for any one to lift the belt over, situated as Toomey was, without its coming in contact with the pulley, and such contact might produce the jumping of the belt.
The negligence of Einan was in ordering an inexperienced man to perform a duty that was dangerous for one man alone to perform, and which should have been performed by Sullivan and Toomey both.
We think the evidence supports the verdict.
It is olaimed that there was a variance in that the testimony showed that the belt was not over the hammershaft during the time that it was claimed it was dragging, but *195 was over the main shaft alone; and it is claimed that that variance is such that the plaintiff in error can even now avail himself of it, and that it is such that this case should' be reversed. I have said all on that subject, that is necessary to say.
We find that the court did not err in refusing to grant a. new trial because of newly-discovered evidence.
It is claimed that the court erred in charging the jury...
First, that the court erred in defining negligence on the part of the plaintiff as a ground for defense, He first said; “You will observe also that the answer alleges that the plaintiff was himself negligent or, to use a common1 form-of speach, was guilty himself of contributory negligence.” Then the court says, “That makes it necessary to define contributory negligence ” Then the court gives the definition.
Our attention has heretofore been called to this identical" definition given by the judge below, and we have said all - that it is necessary for us to say in regard to that matter.
The negligence of the plaintiff below was either negligence, or contributory negligence. The court has clearly defined these terms, and the court said to the jury that the • plaintiff could not recover if he was guilty of negligence, and he clearly said to the jury that the plaintiff could not recover if he was guilty of contributory negligence.
The only distinction that can be drawn between negligence and contributory negligence, is, that one may act and' operate alone, independent of negligence of any other person, while contributory negligence,as the very term means, is that which operated with something else to create. And the definition, as given by the court, is one that is approved-’ by a great many authorities, and the one that is frequently .given in the decisions found in the books.
As we have heretofore discussed this subject to some extent, we will say nothing more about it at this time. But we do not believe that there was any error in the definition-of the court, nor was the jury mislead in any manner by it.
■It is complained that the court erred in charging the jury • “that if there were dangers incident to the work at which the plaintiff was engaged, known to the defendant, or which. ought to have been known to him by the exercise of ordi- *196 nary care, but unknown to the plaintiff and not discoverable by him by the exercise of ordinary care, under such circumstances it became and was the duty of defendant to call plaintiff’s attention to such dangers,”
It is claimed that this is defective in that the plaintiff in error would not be liable unless it was ignorant of defendant in error’s ignorance, It is claimed, in other words, that the defendant below was or ought to have been itself aware that the plaintiff was in need of such instruction, That depends entirely upon the nature of the work that is to be performed. If the danger is a latent one, that is, not readily discoverable by the workman, then the master must point out such dangers; and if the danger is one that the master is supposed to know, but which is not readily known to the servant, and which the servant may not know and about which the master is uncertain as to whether he will know or not, under such circumstances the authorities hold that it is the duty of the master to point out the danger; and it is not the law that the master does not become liable and is under no obligations to point out dangers until be knows that the servant does not know of it. And the charge as given by the court when it comes to applying the evidence to the law as laid down by the court, is correctly stated.
This was a case where the master knew or ought to have known the dangers attending the moving of that belt; and yet the great danger, the very danger that injured the party, was one that might not be known and not likely to be known by one not experienced in the business — that of allowing the belt to touch the pulley and cause it to kick and strike him.
What is said in regard to this matter, applies equally well to the next objection taken to the charge of the court, as stated in the brief of counsel for plaintiff in error.
We find no error in the charge of the court as given to the jury.
It is claimed that the court erred in refusing to give requests asked.
Request eight assumes, in starting off, that this was’ a manufacturing in which Sullivan was an artisan and Toomey was his helper; and then the court is asked to say, that the *197 relation of superior and subordinate does not arise from that relation, especially if the artisan is merely to indicate by words or signals when 1 he assistance or co-operation of such helper is required; and asked the court to state that if that was their relation to each other, then the artisan and helper were fellow servants in a common employment, and that the company would not be liable for the injury of either resulting from the negligence of the other,
For an, HoTighe & Balter, for Plaintiff in Error.
Ford, Henry, Snyder & McG-raw, for Defendant in Error.
The court was warranted in rejecting this request, principally because it is not based at all upon the rule in this 3tate. The rule in this state is not determined — A case under it is not determined by whether the persons were artisan and helper, or what their relations were, rather than that one was put in control over the other. And this, request nowhere calls for that rule, nor for the case to be determined under it; but it states other relations of- the artisan ■or of these persons, such as artisan and assistant, and then assumes certain facts as to how they did act towards each other, and, upon that, asked the court to state that the company would not be liable if either was injured by the negligence of the other, That i,s not the basis on which the liability of the master is determined in this state.
Complaint is made because request ten was not given.
The want of an engineer, óf course, was not the proximate cause of the party becoming entangled in the belt; but it was proper to leave to the jury whether it was a cause •acting with other causes that produced the injuries complained of.
Request twelve is complained of, and we think the charge sufficiently covers the law called for in that request, so far as it should have been given.
Requests fifteen, sixteen and seventeen, were properly refused by the court.
The question was not one of presumption on the part of the jury, but whether Toomey was negligent in not knowing what he might have known, and it was proper to present the matter to the jury in that light, and not in the light •asked for in these requests.
The judgment of the court of common pleas is affirmed,